**TRADERS & GENERAL INS. CO. v. SCOTT et al.**

No. 14702.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 7, 1945.

Rehearing Denied Oct. 12, 1945.

634

Lightfoot & Robertson and Dan P. Johnston, all of Dallas, and Turner & Seaberry, of Eastland, for appellant.

Bert King and Arch Dawson, both of Wichita Falls, for appellees.

SPEER, Justice.

This is a workman's compensation case. Traders & General Insurance Company, the insurance carrier, appealed to the District Court of Wichita County from an award made by the Industrial Accident Board in favor of Mrs. R. G. Scott and her minor daughter, Jo Ann Scott, surviving beneficiaries of R. G. Scott, deceased, an employee of Roy Broadway, who carried Workmen's Compensation on his employees.

The above named beneficiaries answered by general denial and cross action against Traders & General Insurance Co. and recovered judgment on their cross action. The insurance carrier appealed and will be referred to by us as appellant and the beneficiaries will be called appellees.

Appellant's appeal from the award to the District Court was based primarily upon the theory that deceased received the injury from which he is alleged to have died while in a state of intoxication. Second Subsection 3 under section 1, Article 8309, Vernon's Texas Annotated Civil Statutes. By appropriate pleadings of all parties, the issue was made and tried to a jury, resulting in a verdict and judgment thereon in favor of appellees.

At the outset we are confronted with an objection by appellees to a consideration by us of any of appellant's points of error except two, they being appellant's contention that it should have had an instructed verdict and in any event, the court should have granted its motion for judgment notwithstanding the verdict.

The objections of appellees are substantially to the effect that appellant's points of error cannot be considered because they were raised only in an amended motion for new trial which was filed too late and therefore ineffective for any purpose.

The record discloses without dispute that judgment was entered February 5, 1945; that appellant filed its motion for new trial on the same day; the motion for new trial assigned error of the court in not granting its motion for an instructed verdict and having failed to do so, error in refusing to grant its motion for judgment non obstante veredicto. On March 1, 1945, appellant filed its amended motion for new trial (more than twenty days after filing its original motion). On the same day, March 1, 1945, appellant filed a motion with the trial court showing reasons for not having sooner filed its amended motion and asked that its amended motion be filed back as of date February 24, 1945, and on same day filed a motion asking that its original motion filed February 5, 1945, be refiled as of February 12, 1945. On that same day the court sustained both motions for refiling and filing back and the original motion bears the clerk's file marks of

February 5th and February 12th, and the amended motion carries the clerk's file marks of February 24th and March 1, 1945. On the same day, March 1, 1945, the court, by separate orders, overruled both the original and amended motions for new trial. In the amended motion we find the assignments of error, including those complaining of failure to instruct a verdict and to grant, in the alternative, appellant's motion for judgment notwithstanding the verdict. The assigned errors in the amended motion for new trial are depended upon by appellant as a basis for its points of error. Appellees' objections go to all of the assigned errors in the amended motion, except the two relating to peremptory instruction and judgment non obstante veredicto.

■ As a prerequisite to appeal in jury cases, such as this, a motion for new trial must be filed, except where only complaint is made that the court erroneously gave an instructed verdict or for rendering or refusing to render judgment non obstante veredicto. Rule 324, Texas Rules of Civil Procedure. The motion for new trial will constitute the assignments of error on appeal. Rule 374, Texas Rules of Civil Procedure.

■ Wichita County District Courts, with respect to appeals, are among those controlled by Rule 330; subdivision (k) of that rule provides that when motion for new trial is required, it must be filed within ten days after the judgment is rendered and "may be amended by leave of the court at any time before it is acted on within twenty (20) days after it is filed." Subdivision (j) of Rule 330 provides, among other things, that "all motions and amended motions for new trials must be presented within thirty (30) days after the original motion or amended motion is filed and must be determined within not exceeding forty-five (45) days after the original or amended motion is filed, unless by written agreement of the parties in the case, the decision of the motion is postponed to a later date." There is no contention here that there was any written agreement to postpone; that the amended motion was acted on by the court within thirty days after it was filed is not disputed; in fact, it was overruled on March 1, 1945, the very day it was actually tendered and filed, although under order of the court was again filed back as of February 24, 1945. The ob-

jection made here by appellees is that the amended motion was filed too late and even though overruled by the court on the same day it was filed, cannot form the basis for assignments of error and points of error thereunder on this appeal.

We have concluded that appellees' objections should be sustained, and that we cannot consider the points of error based on the amended motion for new trial.

By an Act passed by the Forty Sixth Legislature, page 201, of the Regular Session, complete rule-making power in practice and procedure in civil actions in the courts of this state, was vested in the Supreme Court. Pursuant to said Act the Supreme Court formulated and adopted what is known as our "Texas Rules of Civil Procedure." Many of these Rules are re-enactments of previously existing statutory provisions. This is especially true with respect to sections (j) and (k) of Rule 330 mentioned above. Subdivision (j) of Rule 330 is a verbatim copy of section 28, Art. 2092, as it existed before the rules were promulgated. Subdivision (k) copies section 29 of Article 2092 except for the change of the word "rendered" used instead of "entered" as it appeared in the previous statute.

■ It is the universal rule that when a previous statute is re-enacted the same interpretation will be given to it that was given by the courts of last resort to the statute before its re-enactment.

■ As applicable to the point before us, our Supreme Court has interpreted sections 28, 29, and 30 to mean that in cases like this, the amended motion for new trial *must* be filed within 20 days after the filing of an original motion for that purpose—that the provisions of subdivision (k) requiring this is mandatory and that if filed later than 20 days thereafter, is ineffective for any purpose; it is a nullity. Dallas Storage & Warehouse Co. v. Taylor, Dist. Judge, 124 Tex. 315, 77 S.W.2d 1031; Millers Mutual Fire Ins. Co. v. Wilkerson, 124 Tex. 312, 77 S.W.2d 1035; Independent Life Ins. Co. of America v. Work, Dist. Judge, 124 Tex. 281, 77 S.W.2d 1036. Subsequent to the above cited cases this court has adhered to the construction therein contained. City of Wichita Falls v. Brown, Tex.Civ.App., 119 S.W.2d 407, writ dismissed; Tunstill v. Scott, Tex.Civ.App., 182 S.W.2d 734, writ refused, want of

merit. Those interested may profit by reading the many cases enumerated in Shepard's Citations, under these authorities, too numerous to cite here.

■ The order of the trial court authorizing the refiling of the original motion as of February 12, instead of February 5, 1945, and its order of March 1 to file the amended motion first filed on that day, back to February 24, 1945, was ineffective to accomplish the purposes sought, that is to bring the filing of the amended motion within 20 days of the filing of the original motion. It matters not how much the reasons of appellant for not having sooner filed its amended motion appealed to the court, the trial court could not circumvent the mandatory rule by doing indirectly what he could not do directly. It was held in Millers Mutual Fire Ins. Co. v. Wilkerson, 124 Tex. 312, 77 S.W.2d 1035, 1036 that the trial court is without authority to extend the time for filing amended motions for new trial. In Dallas Storage & Warehouse Co. v. Taylor, supra, the Supreme Court, at page 1034 of 77 S.W.2d, said: "A strict construction must be given to that part of subdivision 29 (now subdivision k, of Rule 330) which relates to the time for the filing of an amended motion for new trial. Trial courts could in a large measure defeat the purpose of the amendment of subdivision 28 (now subdivision j, of Rule 330) by permitting amended motions to be filed after the expiration of the time fixed by the statute for their filing. * * * We therefore construe subdivision 29 to mean, since the amendment of 28, that an amended motion for new trial must be filed within 20 days after the original motion is filed, and that no amended motion may be filed after the expiration of that period."

Appellant has filed a very interesting reply brief to appellees' objections above discussed. It bases its contention that the trial court was authorized to act on its amended motion upon this proposition: "The trial court had jurisdiction to pass upon appellant's amended motion for new trial, which was filed within 30 days from the date of the judgment, and appellees' objections to the consideration (by this court) of the assignments, contained in said amended motion, should be overruled." To support its contention, it relies upon Article 2092, Secs. 28, 29, and 30 (and the corresponding subdivisions of Rule 330, j, k, and l); Rule 5, Texas Rules of Civil Procedure; and that line of cases by the Supreme Court cited and referred to by Judge Greenwood in Independent Life Ins. Co. v. Work, Dist. Judge, 124 Tex. 281, 77 S.W.2d 1036, cited by us above. It lays special emphasis on the cases of Diamond Ice & Cold Storage Co. v. Strube, 115 Tex. 515, 284 S.W. 935 and Townes v. Lattimore, Dist. Judge, 114 Tex. 511, 272 S.W. 435, and similar cases decided before the amendment of Sec. 28, Art. 2092, Vernon's Texas Annotated Statutes. That section of the statute was amended in 1930 by Fifth Called Session of 41st Legislature, c. 70, page 227. The whole section was re-enacted except a change of the word "shall" was made to read "must." This was done because the courts had previously construed the old provision to be directory and by the re-enactment the Legislature indicated that it had the intention of making the rule mandatory. Since said amendment, the courts have construed its provisions, taken in connection with subsequent sections 29 and 30 to be mandatory. Since the amendment, the Supreme Court has uniformly held, as in Dallas Storage & Warehouse Co. case, supra, that: "No amended motion for new trial may be filed after the expiration of 20 days from the date of the filing of the original motion, and an amended motion filed after the expiration of that period is to be treated as of no effect."

■ Appellant cites Rule 5, Texas Rules of Civil Procedure on "Enlargement of time" by the trial court, but as we read that rule appellant can find no comfort there, since after the specified conditions of "good cause" is shown under which a court may enlarge certain periods of time, it provides: "But it (the trial court) may not enlarge the period for taking any action under the rules relating to new trials or motions for rehearing except as stated in the rules relating thereto * * *." It is obvious to us that the two orders of the trial court changing the real filings of the original motion for new trial and of the amended motion in this case are in direct violation of Rule 5 and Subdivisions j, k, and l, of Rule 330, Texas Rules of Civil Procedure and were ineffective for any purpose. See Cocke v. Birr, 142 Tex. 432, 179 S.W.2d 958.

This brings us to a consideration of appellant's contentions that the court erred in refusing to grant its motion for an instructed verdict and having refused that

motion, to grant its motion for judgment notwithstanding the verdict.

It is contended by appellant that the un-contradicted evidence shows that deceased was in a state of intoxication when he received his injuries and therefore the court erred in refusing to instruct a verdict in its favor and upon the same theory it was error to overrule its motion for judgment notwithstanding the verdict.

In determining these points of assigned error we must apply familiar rules applicable in such cases. The jury is the trier of the facts and are the exclusive judges of the facts proved and the weight to be given the evidence. When the evidence is conflicting and would support a verdict either way, and the jury finds facts in response to issues, the appellate court has no authority to substitute its own fact findings for those of the jury. Oats v. Dublin National Bank, 127 Tex. 2, 90 S. W.2d 824. A jury finding on facts will not be set aside because it does not appear to be clearly right, but it must appear to be clearly wrong before it will be set aside. Texas Cotton Growers Ass'n v. McGuffey, Tex.Civ.App., 131 S.W.2d 771, writ dismissed. When the evidence is sufficient to make an issue of fact, it should be submitted to the jury, if one is demanded, and no instructed verdict should be given. Wallace v. Southern Cotton-Oil Co., 91 Tex. 18, 40 S.W. 399. To justify the court in taking the case from the jury or to instruct a verdict for either party, the evidence must be such that there is no room for ordinary minds to differ as to the conclusions to be drawn from it. Lee v. International & G. N. R. Co., 89 Tex. 583, 36 S.W. 63, 65. In determining if there is evidence to support a verdict, the rule is, "If discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict." 17 Tex.Jur. 910, Sec. 410, and cases cited in foot note. The court should instruct a verdict if all of the evidence of the opposing party, considered in its most favorable light to him, would not support a judgment in his favor. City of Houston v. Chapman, Tex.Com.App., 123 S.W.2d 652; McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442.

In the instant case, upon special issues the jury found that (1) deceased sustained a personal injury; (2) it was the result of an accident; (4) the sustained injury was a producing cause of the death of Scott; (5) deceased's death did not result solely from a disease or diseases, other than the disease or diseases naturally resulting from the accident; (6) Scott (deceased) was not in a state of intoxication as that term is defined by the court, at the time he sustained the injury.

We shall give a brief summary of the evidence which under the rules above mentioned must be considered in its most favorable light to appellees, in determining whether or not a summary instruction should have been given for appellant. R. G. Scott (deceased) was an employee of Broadway, the employer who carried a policy of Workmen's Compensation insurance covering his employees at the time of the accident; deceased had worked for his employer about sixteen months, was a good worker and performed his duties well; Broadway saw deceased about 2 o'clock of the afternoon that he was injured; if he was drinking Broadway could not tell it; he never saw deceased take a drink in his life. Another employee saw deceased at about the same hour of the day when deceased loaded his truck with gasoline to be delivered at Electra, Texas, about 28 miles away; this employee said he talked to deceased, was close to him, and if deceased had had a drink he could not tell it—that he was sober. Deceased's wife said he came by home about 2 o'clock and ate his lunch and left with his truck of gasoline; that this was on Wednesday November 10; that he died on November 14; that when deceased left home that day after he ate lunch he was not drinking; that if he had drunk any that day she could not tell it; that about ten years before his death deceased began drinking a little at night when he came in tired; that later he drank "quite a bit" in the evenings, but was always able to go to work next morning; he didn't drink in the mornings; that a few weeks before his death witness and deceased went to see Dr. Crump; during the interview they told the doctor deceased was nervous and couldn't sleep much; that deceased had been drinking a "good bit;" upon inquiry by Dr. Crump deceased told him he had been drinking heavily; that the doctor told him that if he didn't quit drinking he would

have trouble with his stomach; he did not quit drinking but drank some each evening; he kept whiskey in the house. She said her husband knew she did not want him to drink, and they didn't "talk too much about it."

Deceased arrived at Electra with his load of gasoline at about 5:15 o'clock that afternoon. One of the attendants at the filling station said Scott was "a little wobbly, it wasn't hard to get around, he got around fine." Another attendant at the station said he saw the truck when it arrived at the station, but he was inside the building counting stamps; that Scott had to make two rather short right angle turns from the highway to the station; that when he came in he stopped the truck at the right place to unload but was three or four feet farther north than where he usually stopped; the hose would reach and the truck could be unloaded from where it stopped. Witness did not go outside at that time; Scott asked him if he (the witness) wanted him to check the tanks; this was the attendant's job, but he told Scott to do it, he was busy. The truck was unloaded into the underground tanks and Scott climbed up on his truck to see if own tanks were empty and fell to the cement floor below, striking with his shoulders apparently on the cement ledge 4½ inches higher than the floor. Deceased did not get up promptly and the two attendants helped him up; he had fallen with his arm under his body; after getting up he complained of his arm hurting him; he went to his truck and got a pint bottle containing a third or half full of whiskey and asked them to rub it on his arm; they declined; he turned sick and lay down in his cab a few minutes and got up and took the whiskey into the washroom; witness called a doctor who told him to bring Scott to the clinic; when Scott came out of the washroom he was taken to the clinic; later witness found the empty bottle in the washroom.

Drs. Crump and Fish were called as witnesses by appellant and Dr. Prichard by appellees. Dr. Fish saw deceased first and treated him two days for the dislocated elbow and until he developed a case of delirium tremens. He was carried to Wichita Falls where Dr. Crump reset his arm and treated him until he died about 3 o'clock Sunday morning. Dr. Crump said Scott died of heart failure, brought on by delirium tremens. Dr. Crump said he had seen deceased about six weeks before at a time when he was very nervous and had tremors in his hands; that he questioned deceased about drinking, and he admitted he had been drinking heavily, and the doctor told him that if he didn't quit he was liable to have serious trouble; that he thought at that time Scott was approaching delirium tremens. He said delirium tremens is a disease—an involvement of the brain which comes from the excessive use of alcohol.

Medical books were produced by appellees and all three doctors were questioned concerning what was contained in those books on the subject of delirium tremens; all agreed with the texts that an alcoholic was more susceptible to delirium tremens from a shock, surgery or other injury than a normal person; they said a dislocated elbow was very painful and even worse than a broken bone; all three doctors being propounded hypothetical questions based on the history of the case, said at different times and in different ways that the injury to deceased's elbow could, might, and more than likely did, produce delirium tremens in Scott, from which he died.

We have not attempted to relate the evidence relied upon by appellant to establish that deceased was intoxicated at the time he fell; the jury had both sides of the highly controverted point and resolved it in favor of appellees. This they had a right to do, and we are bound by their findings, if there is any evidence of probative value to support it. In view of the evidence above pointed out, we are unwilling to say the evidence does not support the verdict, nor that in view of it all, that the court erred in not instructing a verdict for appellant. It must follow that if no instructed verdict should have been given the court did not commit reversible error in refusing the motion for judgment non obstante veredicto.

Based upon what we have said we conclude that the judgment of the trial court should be affirmed, and it is so ordered.