### McLEAN et al. v. McCOLLUM.
### No. 5870.

Court of Civil Appeals of Texas. Amarillo.
March 15, 1948.

Rehearing Denied April 12, 1948.

Bradley & Wilson and Vickers & Vickers, all of Lubbock, and Carl E. Ratliff, of Levelland, for appellants.

Allison & Chandler, of Levelland, and F. D. Brown, of Lubbock, for appellee.

PITTS, Chief Justice.

This suit was filed by appellee, W. D. McCollum, against appellants, Ella S. McLean and husband, Joe McLean, for the cancellation of a mineral deed purporting to convey three-fourths of the mineral interest in and under forty-three acres of land situated in Hockley County, Texas. The case was tried to a jury on special issues resulting in a verdict for appellee upon which a judgment was rendered for appellee and appellants have perfected an appeal to this Court.

The instrument in question was signed by appellee on April 17, 1947, at a time when he was eighty-seven years of age. Appellees pleaded lack of consideration, no legal delivery of the instrument, mental incapacity of appellee, duress and undue influence. Appellants answered joining issues with appellee and further pleading that prior to the execution of the mineral deed in question appellee had entered into a verbal agreement with appellant, Ella S. McLean, to the effect that she would provide a home and care for him for the remainder of his life in return for which he would convey to her the mineral rights in question by the execution of the deed in question.

The jury found a lack of mental capacity on the part of appellee to execute the instrument, failure of delivery of the instrument, that it was executed because of duress and undue influence, and that no prior agreement was made between appellee and appellant, Ella S. McLean, to execute the instrument in question as was claimed by appellants. Upon the verdict of the jury the trial court rendered judgment cancelling the mineral deed in question and removing the cloud from appellee's title.

Appellant's predicate their appeal upon ten points of error complaining in effect in nine of the points that the evidence was insufficient to support the findings of the jury in their last point they charged that improper evidence was heard and considered by the jury.

To test the sufficiency of the evidence to determine if it will support the verdict of the jury, we must give credence only to the evidence and circumstances favorable to the verdict and disregard all evidence and circumstances to the contrary. Cartwright v. Canode, 106 Tex. 502, 507, 171 S.W. 696; Underwood v. Security Life & Annuity Co. of America, 108 Tex. 381, 194 S.W. 585; and Alexander Marketing Co. v. Medford, Tex.Civ.App., 170 S.W.2d 809, and other authorities there cited.

In the observance of another rule we are not authorized to disturb the verdict of the jury if there is evidence of probative force to support the jury findings. On the contrary the rule is well settled that it is our duty to uphold the verdict of the jury unless its findings are manifestly erroneous and they will then be overruled only when they are without any evidence to support them or where they are found to be so against the greater weight and preponderance of the evidence as to be manifestly wrong. Leonard v. Smith, Tex.Civ.App., 186 S.W.2d 284; Custer v. McGough, Tex. Civ.App., 184 S.W.2d 668; Gossett, Banking Commissioner v. Green, Tex.Civ.App., 153 S.W.2d 500; Belstrom v. Belstrom, Tex.Civ.App., 144 S.W.2d 614.

The case was heard in the trial court on September 22, 1947. Dr. John D. Dupree, a physician and surgeon, after qualifying as such testified as a witness that he had known appellee six or seven years, during which time he had attended him professionally several times; that he had seen him professionally twice in April or May, 1947, and had examined him recently; that as a result of his observations and examinations of appellee he would say appellee had a bad memory, was physically weak and was afflicted with senile dementia; that his mental functions had deteriorated to such an extent that he could not take care of himself; that in his

opinion appellee had not been mentally or physically able to look after his own business for several years, during which time he was not competent to understand the nature and consequences of his own acts. Appellee testified at length before the jury and was carefully cross-examined by counsel for appellants. The jury had an opportunity to observe his demeanor and hear him examined as a witness. Although the issue was controverted it is our opinion that the evidence and circumstances were amply sufficient to support the first finding of the jury to the effect that appellee did not have mental capacity to execute the deed in question. This finding alone is sufficient to invalidate the deed in question.

However appellants next contend that the evidence does not support the jury's finding to the effect that there was no delivery of the deed in question. In connection with the submission of this issue, the trial court defined the term "Delivery" about which definition there is no complaint and the jury found no delivery of the instrument was made. In support of this issue appellee testified that on the day the instrument was signed by him, appellant, Joe McLean, pushed him into an automobile over his protest and drove him to Levelland, Texas, without telling him why they were going to town other than to tell him he must hign some papers since the will he had previously signed was all wrong; that he told Joe McLean he wanted to talk to his attorney, Al Allison, before signing any papers but Joe would not let him talk to his attorney; that Joe said, "I am your lawyer and your guardian and your administrator and I am going to take care of you and make you some money;" that, after they got to Levelland, appellant, Joe McLean, pulled him out of the car, pulled him into an office, placed the deed in question on a table before him and told him to sign it; that he hesitated and Joe said, "Now sign right there, Mc, she's all right" and showed him where to sign the instrument; that he signed the instrument and left it on the table after which he was dragged out of the office by Joe, placed in the car and driven home; that he had not read the instrument nor heard it read and did not then know what he had signed but thought from what Joe had said he was making a change in his will; that nothing was said to him about the instrument he was signing being a mineral deed to a part of his land; that he never at any time had the instrument in his possession and never gave it to anybody and had not seen it since; and that he never at any time intended to convey to appellant, Ella S. McLean, any part of his mineral rights to his land. This testimony of appellees was controverted but the jury heard the testimony and observed the demeanor of the witnesses. The jurors were exclusive judges of the credibility of the witnesses and of the weight to be given to their testimony. The jury found there was no delivery of the instrument in question and it is our opinion that there is sufficient evidence to support such a finding.

Upon the evidence heretofore stated and other evidence of like import, all of which was controverted, the jury likewise found that appellee executed the deed in question under duress by appellant Joe McLean and as a result of undue influence exerted upon him by both appellants. In addition to the evidence hereinabove stated the record further reveals that some time prior to the execution of the deed in question appellee was living alone on his own premises and was moved to the premises of appellants where he occupied a one room house that had likewise been moved from his premises and placed on appellants' premises near their living quarters for appellee to occupy. He was occupying such room as living quarters and taking his meals with appellants when the deed in question was signed by him. The record further reveals that appellee had previously executed a will of date March 6, 1946, naming his eleven children as the only beneficiaries therein and naming Joe McLean as the executor thereof but subsequently thereto on October 8, 1946, he revoked the said will by making a new will in which he named the eleven children as beneficiaries but in which new will he also named appellant, Ella McLean, as a beneficiary. In his new will he bequeathed to Ella McLean one-half of his land at his death consisting of forty-three acres in order to pay her "for the care and keeping of the said W. D.

McCollum until his death, short or long * * *". and Joe McLean was named executor also of the latter will. Appellee contended that he gave appellant, Ella S. McLean, the surface only of the forty-three acres of land bequeathed to her under the terms of the will and that it did not include the mineral rights thereunder while appellants contended that it did include the mineral rights. Nevertheless, the mineral deed in question was later drawn and signed by appellee as heretofore related to cover the mineral rights to the same forty-three acres of land bequeathed to appellant, Ella S. McLean, under the terms of his last will. According to the record the last will was drawn by Mrs. Jean McDermott, the daughter of appellants, who wrote the will on a typewriter. A photostatic copy of the said will introduced in evidence shows some pen or pencil notations or changes made with a pen or pencil, which changes or alterations Mrs. Jean McDermott testified were made by appellant, Joe McLean. The record also reveals that a new oil well was started near appellants' land in question just prior to the signing of the mineral deed in question. Under all the facts and circumstances it is our opinion that the evidence supports the findings of the jury to the effect that the deed was signed under duress and as a result of undue influence. Appellants' complaints to the contrary are therefore overruled.

The issue of whether or not appellee agreed with appellant, Ella S. McLean, prior to April 17, 1947, to execute the mineral deed in question in consideration of and for the purpose of paying her for furnishing him a home and caring for him for the remainder of his natural life was controverted. The jury answered the issue against appellants and favorable to appellee. In our opinion there is sufficient evidence to support the jury's finding.

Appellants further contend that the trial court erred in permitting a nonexpert witness to testify over their objections to the effect that appellee did not have mental capacity to execute the deed in question at the time and that such was error notwithstanding the withdrawal of the testimony of the witness from the jury by the trial court and instructing the jury not to consider it.

The record reveals that witness, Homer Henly, gave the testimony about which appellants complain. The witness testified he had known appellee since 1911 and subsequently thereto he was associated with him for six or seven years in the State of Arkansas; that appellee's mental condition was good during the time he knew him in Arkansas; that he did not see appellee again until 1945, since which time he had seen appellee, talked with him and observed his physical condition frequently; that as a result of his acquaintance with appellee and observations of him it was his opinion that appellee was not mentally competent to sign a deed and understand its nature in April or May, 1947. Counsel for appellant objected to the latter part of the testimony on the grounds that the witness was not competent to express an opinion as to appellee's mental capacity since he had not stated sufficient facts upon which to base such an opinion and to qualify himself to testify about such a matter. The trial court sustained the objection but permitted appellee's counsel to further examine the witness. The witness further testified that during his association with appellee from 1945 through 1947 that appellee was weak and in bad physical condition; that he had been associated with appellee and talked with him often, read and handled appellee's mail for him many times; that appellee's memory was bad and he was not able to understand his mail sometimes and parts of it had to be carefully explained to him; that his physical and mental condition got worse all the time. The witness was then permitted over the objections of appellant's counsel to express an opinion that appellee was mentally incompetent in April or May, 1947, to execute the deed in question or to understand the nature of his acts. He gave such an opinion based upon the facts to which he had just testified. In rebuttal appellants offered the testimony of several nonexpert witnesses who testified that appellee was mentally competent to transact business matters at the time in question, after which appellants moved the trial court to exclude the testimony of the nonexpert witness, Homer Henly, to the effect that ap-

pellee was not mentally competent to execute the deed in question or to understand the purport of such a legal instrument. The trial court sustained the motion, had the questions propounded to the witness, Henley, inquiring about such a matter and the answers of the questions thereto read to the jury and instructed the jury not to consider the questions propounded to the witness or his answers thereto concerning the matter inquired about for any purpose whatever. Nevertheless appellants contend that the questions and answers were prejudicial and damaging to such an extent that its effect could not be removed from the minds of the jury by an instruction from the trial court.

For several reasons the contentions of appellants are not well taken. A witness need not be an expert in mental diseases in order to be competent to express an opinion, based on personal observations, as to the mental condition of another. Appellants recognized such a rule when they offered the testimony of several nonexpert witnesses based upon their observations and associations with appellee in support of the contention made by appellants that appellee was mentally competent to execute the deed in question. It has been held that such witnesses should be permitted to express an opinion as to the sanity or mental condition of a person as a result of the witnesses' observations, accompanied with a statement of the facts observed. This question was fully discussed by the Supreme Court in a contested will case styled Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 626, 36 L.R.A. 64, which case has since been many times cited. After discussing the rule established in other jurisdictions as well as in our own state the court said: "We consider that the decisions of our own court, cited above, established the rule that all witnesses, whether subscribing witnesses, experts, or others, who know the facts, and having stated such facts, may express opinions, founded upon their own knowledge, as to the mental condition of the testator. This rule is well sustained by sound reasoning and authority."

Under the record before us in this case it is our opinion that the trial court did not commit error in admitting the testimony of Homer Henley about which appellants complain. However, if such was error, the trial court corrected it by withdrawing it from the consideration of the jury and instructing the jury not to consider it for any purpose. It is presumed that the jury followed the instructions of the trial court and there was ample evidence in the record to support the finding of the jury on the issue in question without giving any consideration to the testimony of the witness, Homer Henley. The contentions of appellants in this matter are therefore overruled.

After carefully examining the record and appellants' points of error, it is our opinion that all of the points should be overruled and the judgment of the trial court affirmed.