**HIGHWAY INS. UNDERWRITERS v. ROBERTS.**

**No. 15082.**

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 18, 1949.

Rehearing Denied Dec. 9, 1949.

John Davenport, Wichita Falls, Strasburger, Price, Holland, Kelton & Miller and Royal H. Brin, Jr., all of Dallas, for appellant.

Allen, Locke & Kouri and Z. D. Allen, all of Wichita Falls, for appellee.

SPEER, Justice.

This is a workmen's compensation case. Appellant, Highway Insurance Underwriters, the insurance carrier, filed this suit to cancel an award of the Industrial Accident Board in favor of L. F. Roberts, an employee of P. A. Smulcer. Appellee answered and cross actioned against appellant to recover compensation for alleged accidental injuries sustained while in the course of his employment by said P. A. Smulcer on June 10, 1948. At a jury trial appellee recovered judgment, hence this appeal.

It was stipulated at the trial that appellee was an employee of P. A. Smulcer on June 10, 1948 at an average weekly wage rate of $60 and had worked at the same or a similar kind of work for substantially the whole of the preceding year.

Appellant relies upon three points of error for reversal. As we discuss each we shall endeavor to disclose those parts of the record material to the point.

First point reads: "The verdict is not supported by the evidence and is contrary to the weight of the evidence."

By the jury's verdict, which is attacked by the above quoted point, it was found that: Appellee sustained an accidental injury on June 10, 1948, while in the course of his employment; from which he suffered a disability; the disability was total; such disability was not solely caused by injuries, diseases or conditions wholly unconnected with the accident occurring in the course of his employment; the duration of appellee's total incapacity will exist from June 10, 1948 for 201 weeks; there

was and will be no partial incapacity. There were other findings not necessary to be mentioned.

It is not contended here by appellant that there was no evidence to support the verdict but only that the verdict is not supported by the evidence, and further that the verdict is against the weight of the evidence. To us the point presents two questions which in some respects are similar. In appellant's objections to the charge it urged that there was no evidence to support the submission of special issues 1, 2, 4, 5, 5a, 7, and 14. That contention is apparently abandoned on appeal. In its motion for new trial separate assignments were urged to each of special issues 1 to 8 because, (a) the answers to each of said issues are contrary to the evidence, and (b) the evidence is insufficient to support the jury's answer to each of said issues.

We have carefully studied the testimony offered by both sides. There are conflicts between appellee's testimony and that of a man who helped him unload a heavy pump jack, at which time appellee claims to have sustained his injuries. The helper said in effect that the cargo was not unloaded in the manner related by appellee. Then too, appellee testified that he told Drs. Little, Parnell and Heyman, whom he called on for medical attention, of having received an injury and complained to them of pains in his back. These doctors, introduced by appellant, said he did tell them of having received an injury but did not complain of pains in his back.

In addition to the conflict in the testimony related above, there is a further difference in the expert opinions of Dr. Walker, who testified for appellee, and Drs. Parnell and Heyman, who testified for appellant, as to whether or not a heavy strain of the muscles in the back could and probably would cause a fractured vertebra and displaced coccyx, which they all admittedly found in the X-ray pictures of appellee's back. To relate all of the testimony would unnecessarily extend this discussion and we can hardly expect to satisfy both parties by giving less than all.

It is sufficient to say just here that considering the stipulated facts, appellee's testimony and that of Dr. Walker's, there was substantial testimony of probative force, which, if believed by the jury, would support the verdict.

It is the generally accepted rule in this state that where the evidence is conflicting it is the province of the jury to reconcile the conflict if it can be done, and if not, to determine from a preponderance of the evidence which should prevail. This rule is predicated upon the fact that they are the sole judges of the credibility of the witnesses and the weight to be given their testimony. Whitten v. Dethloff, Tex. Civ.App., 214 S.W.2d 480, and cases there cited. Also see 3 Tex.Jur. 10 year Supplement, p. 702, sec. 411. When thus determined by the jury we may not override such findings unless they are manifestly erroneous or are "so against the greater weight and preponderance of the evidence as to be manifestly wrong." McLean v. McCollum, Tex.Civ.App., 209 S.W.2d 959, 960, error refused, NRE. We are unwilling to say in this case such findings were clearly wrong. In the last cited case it was held that in determining if the evidence is sufficient to support the verdict, the appellate court will give "credence only to the evidence and circumstances favorable to the verdict and disregard all evidence and circumstances to the contrary." See also 3 Tex.Jur., 10 year supplement, p. 701, sec. 410, and the many cases cited in the footnote.

The Supreme Court has frequently applied the above rule where Courts of Civil Appeals have held that there was no evidence to support the verdict and for that reason reversed and rendered judgments. Underwood v. Security Life & Annuity Co., 108 Tex. 381, 194 S.W. 585 and subsequent cases following it. It is only in such instances that the Supreme Court has jurisdiction. That court has declined to grant writs in scores of cases where Courts of Civil Appeals have applied that test in determining if there was sufficient evidence to support the verdict. 3 Tex.Jur., 10 year Supplement, p. 701, sec. 410, supra.

In support of its contention that the verdict is against the weight of the evidence, appellant argues that in view of the medical testimony relating to the obvious pain incident to sustaining a fractured vertebra, and appellee's failure to mention it at the time he claims to have sustained it, and his admission that he worked two months or more since he claims to have been injured, and never consulted a doctor after the latter part of June prior to filing suit and says he was growing worse all the time, it is inherently improbable that the injury claimed to have been sustained caused the fractured vertebra and displaced coccyx found in the X-ray pictures. In this connection there was testimony before the jury to the effect that appellee called and had medical attention on the first or second day, was dissatisfied with the doctor's diagnosis, continued to suffer pain in his back, remained in bed until he was called back to work on the 18th when he told the caller that he had been injured but really did go out and tried to work that day; that he could do little work but needed the money and tried. That on the next day he had Dr. Parnell to come to his bedside who in turn referred him to Dr. Heyman who recommended an operation Appellee rested a week or so and began to work and after a few weeks found he could not continue and finally quit. That he did not consult doctors again because he was too poor to pay their bills; that he worked when he was unable to do so because he was bound to earn a support for his wife. We think the jury did no violence to the weight of the evidence when they returned the verdict before us.

An application of the above announced rule requires us to overrule the first point of error.

Second point assigns jury misconduct based upon the assertion that a juror during deliberations disclosed to the panel that he had sustained a back injury which did not develop until some time after it was sustained.

The materiality of this assignment will be disclosed by the fact that appellee testified that he said nothing to any one at the time about having received the injury on June 10, 1948 but that he went to bed and called a doctor to see him on the 12th and told the doctor of having received the injury and was suffering from pains in his side and around to his hip and back. Appellee said he told his employer's son on June 18 and his employer on June 19 following that he had been injured. His statement about having notified the employer and his son was not controverted.

After trial and acceptance of the verdict, motion for new trial was filed, which embraced the claim of jury misconduct in the matter above mentioned. The court heard two of the jurors on the contention thus made.

For clarity we quote the pertinent parts of their testimony.

Questions and answers of the juror Harding:

"Q. When you were in there, state to the court whether or not there were two of the jurors that stated to you and the other jurors that they had been hurt in an accident and it didn't show up until sometime later; is that right? A. I don't know whether there were two—I think there was one that mentioned that he had been hurt.

"Q. That he had been hurt and that back injury didn't show up until several weeks later? A. I don't know when he said it was.

"Q. He told about him being hurt, is that right? A. Yes."

Questions and answers of the juror Godfrey:

"Q. After you retired, Mr. Godfrey, state to the court whether or not one of the jurors or two of them, told their personal experience about having received injuries which didn't show up until sometime later. A. I can't recall whether they did or not. Everyone seemed to have the backache from sitting around, waiting so long. I said, myself, if my back had been hurt I would probably tell someone.

"Q. You have never received a back injury yourself. A. Not yet.

"Q. When I talked to you, did you tell me that one or two of the jurors said they received an injury that didn't show up until later? A. I don't know whether they did or not, they said, 'It might have.'

"Q. Who was the juror? A. I couldn't pick him out of the whole bunch."

█ The trial court overruled the motion for new trial without any specific findings on the issue involved. This ruling was the equivalent of a finding by the court that the misconduct asserted did not take place. Sproles Motor Freight Lines v. Juge, Tex.Civ.App., 123 S.W.2d 919, writ dismissed, judgment correct.

█ The testimony heard was very vague, especially upon the contention that the juror had disclosed that the injury sustained by him did not develop until some time later. In fact we think it would require some unwarranted speculation to find that the juror did in fact make that statement, in view of the uncertainty of the testimony heard by the court. In a somewhat similar situation the Supreme Court in Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, declined to reverse a trial court's order in overruling the motion for new trial. We must overrule the point of assigned error and in doing so we do not reach the question of whether or not injury probably resulted to appellant by such ruling of the trial court.

The third and last point complains of improper and prejudicial argument made by appellee's counsel. Such assignments usually require a complete picture of the situation. As pointed out above, a witness for appellant had testified in substance that he was present when appellee claims to have sustained an injury by lifting a 2,000 pound pump jack with a pinch bar and the witness testified that the machine was unloaded with a "pole truck and winch" and that appellee did not prize it off with a pinch bar. While this witness was on the stand and undergoing cross examination and had made some rather evasive answers, he was asked: "Then he (the adjuster for the Insurance Company) did talk to you about paying you to come up and testify for the Insurance Company, didn't he?" The witness answered "Yes."

Appellant's counsel (Mr. Davenport) had evidently attempted in his preceding argument to emphasize the witness' testimony which contradicted appellee, and to explain why the witness was entitled to pay as such witness. The reply argument found in the unqualified bill of exception and the colloquy between the lawyers follow:

"Mr. Davenport told you that it is common to pay folks to come up here and testify; that you wouldn't want to sit on the jury unless you were paid. I'll bet there is not one man sitting on the jury, if you knew something about the facts in a case or a law suit that was going to be tried and somebody would come up and whisper to you, 'You go up and testify for us and we are going to pay you'—

"Mr. Taylor: 'There is no evidence that there was any whispering.'

"'I grant that is true—he might have said it out loud—you can weight that in the scales, too. The first thing you would do is slap his jaws when he came up and offered you money for you to testify for him.'

which defendant now says was inflammatory, prejudicial and outside of the record, and defendant says that same could not have been cured by a proper instruction from the court not to consider the same."

█ We note from the foregoing that (1) apparently no objection to the argument was addressed to the court calling for a ruling thereon and of course none was made and (2) if Mr. Taylor's statement could be deemed as an objection it was confined to appellee's word "whisper" and did not object because it was either inflammatory or an unfair deduction from the testimony of the witness. Appellee's counsel in making the argument without a word from the court admitted there was no testimony of "whispering" but insists that it may have been spoken outloud. If the objection had been made to the court that counsel had interpolated into the testimony the word "whisper" and the court had sustained the objection, it could have

had no greater effect than for counsel to promptly confess, as he did, that Mr. Taylor's statement was true. In either event we think the word objected to was not such as to require a reversal when ruled out by the court or retracted by counsel who made it.

It is argued here that the language of appellee's counsel in withdrawing the word "whisper" "added insult to injury" and became prejudicial and inflammatory. No objection was made to the latter expression by counsel and we consider it a fair comment and a lawyer's deduction from the witness' testimony in that the witness had said in a rather evasive answer that the representative of appellant had said "there may be pay" for him to testify.

The latitude allowed counsel in discussing the testimony and placing his interpretation thereon is well recognized by our courts and this court expressed its views thereon at some length in Whitten v. Dethloff, Tex.Civ.App., 214 S.W.2d 480, and those views and the collated authorities need not be repeated here.

A very careful consideration of this record leads us to the conclusion that no reversible error is presented and therefore all points of error are overruled and the judgment of the trial court is affirmed.