**BECKHAM et al. v. MAYES.**

No. 15115.

Court of Civil Appeals of Texas. Fort Worth.

March 24, 1950.

Rehearing Denied April 21, 1950.

F. V. Hinson and G. D. Hinson, both of Graham, L. H. Welch, of Breckenridge, for appellants.

Marshall & King, both of Graham, Ben J. Dean, of Breckenridge, for appellee.

SPEER, Justice.

This suit was instituted by T. Lacy Mayes, acting by and through his son, B. L. Mayes, as next friend, alleging that T. Lacy Mayes is and has been for several years non compos mentis, against Virgil E. Beckham, James W. C. Beckham, and Ernest Beckham, to cancel three deeds dated May 22, June 3 and August 2, during 1948, executed by T. Lacy Mayes, purporting to convey interests in described land in Young County, Texas; alternative allegations of undue influence were made.

Trial to the jury on special issues resulted in a verdict and judgment canceling the conveyances and quieting title in T Lacy Mayes. The three named defendants have appealed. For brevity, T. Lacy Mayes will be referred to as appellee, and

of course the three defendants are appellants.

Appellee had been previously married and divorced. He had seven children by that marriage. All were adults at the material times in this suit. Some time in 1940 appellee was married to Omer Beckham, a widow, who had three adult sons, who are the appellants here. The land involved was appellee's separate property. He owned a three-fourths mineral interest in the land. Oil was discovered on the land early in 1948. Shortly thereafter, on May 22, 1948, appellee conveyed to his said second wife a one-half interest in the tract of land and when it was found that the conveyance covered a one-half interest in all the minerals when appellee only owned three-fourths of the minerals, on June 3, 1948, appellee and his wife conveyed the land to a trustee, who, in turn, reconveyed it to appellee, who then on the same day conveyed to his second wife a one-half interest in the surface and a one-half interest in the three-fourths mineral interest owned by him.

The second wife died on July 29, 1948, and on August 2, 1948, appellee quitclaimed to her three sons, the appellants here, the one-third life estate inherited by him in the wife's potential one-half interest. These are the instruments that were canceled by the judgment appealed from.

The right of the son to bring this suit as next friend for appellee was vigorously contested below upon the theory that appellee was competent to act in his own right. Appellee was not present in court and the trial judge appointed a local physician to see and examine appellee and to report back to the court. The physician reported that appellee's physical condition would prevent him from attending court and even if he were present "he would not know what it was all about." The matter of the son's right to act in this suit as next friend was submitted to the jury in special issues 1 and 2 and it was found that appellee was mentally incompetent at the time suit was filed and at the time of trial to attend to such a controversy as was involved in this suit. Those jury findings are not attacked by appellants.

The jury's verdict in response to special issues 3 and 4 found that on June 3 and August 2, 1948, appellee did not have sufficient mental capacity to understand and appreciate the property rights and the nature and effect of the deeds on those dates.

By their points of error 1, 3, 7, and 9, appellants challenge the jury's findings in response to special issues 3 and 4 last above pointed out. It is contended that the pleadings and evidence are insufficient to support the verdict and judgment entered thereon.

The testimony consists largely of the opinions of lay witnesses and was highly conflicting. Local physicians did testify in the case but as we view their testimony it, too, was conflicting and no useful purpose would be served in attempting to analyze the effect of either the testimony of the doctors or the laymen.

■ It is no longer debatable that laymen may, after stating their observations, knowledge of habits, conduct, expressions, peculiarities and disposition of another person, testify, giving their opinions as to whether such person was mentally capable of understanding the nature and effect of his acts as relating to his property. 24 Tex.Jur. 416, et seq.; 44 Tex.Jur. 583, sec. 41; 9 Tex.Jur., 10 year supp., 736-7, sec. 41; Chambers v. Winn, 137 Tex. 444, 154 S.W.2d 454. The rule is more frequently applied in will contest cases but there is no distinction drawn by the courts where conveyances or other contracts are involved. Besteiro v. Besteiro, Tex.Com.App., 65 S.W.2d 759, 761.

■ By the points under consideration it is not claimed that there are no pleadings or evidence to support the verdict and judgment but only that they are insufficient for that purpose. Sufficiency of the pleadings is attacked by appellants' points 13 and 14, wherein they complain because the trial court overruled their special exceptions 1 and 2 to paragraphs 3 and 7 of appellee's trial petition. The special exceptions asserted that those paragraphs

were defective because of indefiniteness and consisted of conclusions of the pleader and did not allege facts. We have examined the pleadings complained of and without setting out the lengthy allegations, we think them sufficient and not subject to the special exceptions urged. Rule 45, Texas Rules of Civil Procedure. What we have said in this respect is applicable to the complaints of the insufficiency of the pleadings in points 1, 3, 7, and 9.

Referable to the contention that the evidence is insufficient to support the verdict, we must apply the universally accepted rule in such cases and view all the testimony in the light most favorable to the verdict. This because the jury is the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. In applying the above announced rule, all testimony and circumstances contrary to the verdict will be disregarded. McLean v. McCollum, Tex.Civ. App., 209 S.W.2d 959, error refused, n. r. e.; Highway Insurance Underwriters v. Roberts, Tex.Civ.App., 224 S.W.2d 903, error refused, n. r. e.; see also 4 Tex.Jur., 10 year supp., 701-2, secs. 410-411, erroneously cited as 3 Tex.Jur., 10 year supp., in Highway Insurance Underwriters v. Roberts, supra.

We venture to refer to a small part of the testimony which supports the verdict, although there are over 500 pages in the statement of facts. We have not failed to carefully read all of the conflicting testimony with a view to determining if the jury's verdict was so clearly against the greater preponderance of the testimony as to be clearly wrong as expressed by some of the courts. We do not find it so. Each of the twenty or more lay witnesses who gave it as their opinion that appellee was lacking in mental capacity at the times inquired about in the special issues, detailed transactions, statements and conduct of appellee upon which they based their respective opinions. These matters include such as: Appellee sustained a bad head injury in a car accident in 1937 and had never been the same since that time; that his mind had constantly grown worse, in late years, especially in 1948, at the age of 78 years, he was suffering from high blood pressure, was feeble and tottery in mind and body; he could not carry on a connected conversation; he would start out with some partial sentence and never finish it before he would start on something else, and so joined all expressions together that you could not know what he was trying to say; he went to town one day and upon returning home said he left his clothes somewhere but did not know where he had left them; he attended a family reunion on July 4, 1948 and did not know his near relatives whom he had been associated with for a long time and had seen on that same day. In conversations he apparently did not know what he wanted to say and once started could not finish a thought. He had a sick mind and could not say what he wanted to say. He was watching the witness build an earthen tank with a four mule team and told the witness to put old Annie up there to do the work at a time when there was no mule named Annie but that was the name of his first wife. He said he was going to build a house out of hot water. To another witness he said he would build a house on his land with a vaccination needle if he could get enough hot water. He was assisting a witness to put in a corner post for the witness and when placed as the witness wanted it he tore it out and put it in another way. A Mr. Turner had rented appellee's lands for five consecutive years and at the end of the period sought to rent it again and in conversation with Turner appellee said he could not rent it to him because he did not know what *Turner* was going to do. He told another witness he did not know whether his land was leased for oil or not, while it had been previously leased by him. While planting grain for a neighbor and after the neighbor had adjusted the machine to plant the proper amount of grain he opened the machine and sowed about four times more seed per acre than was necessary. After harvest was over he was engaged with the witness in doing some piece of work on the farm and sat down and remarked irrelevantly that we have just got to get this harvest finished. He started out late one afternoon

to walk to a place twenty miles away where he had been staying, got his clothes entangled in a wire fence and remained there until some one went and released him and took him home. The mail carrier took groceries to him for which he received payment and frequently thereafter appellee tried again and again to pay for the groceries. He would be in a room of relatives, walk out and return and did not know he had seen them a few minutes before. The postmaster would carefully put his mail in his pockets to prevent his losing it. Appellee sat on the side of the bed and while talking to himself said he never would get that corn plowed with those darn little goats that they were eating up the corn. Appellee's wife, Omer Beckham Mayes, had died on July 29, 1948, and he had executed one of the deeds sought to be canceled on August 2, 1948, a few days afterwards, witness' father (brother-in-law of appellee) had died on August 4, 1948, and when appellee came to the house he was told the father had died and he said, "That is fine;" on the same occasion he was asked when Omer Beckham Mayes (his second wife) had died and he said, "Annie died," (Annie was his divorced wife). At the breakfast table on the same occasion he was asked about his children and replied about the Beckham children (appellants here) and said they were his children.

There were many other incidents related by the witnesses along the same general line but we think it unnecessary to enumerate them all. Based upon experiences and observations, such as those above enumerated, at least twenty-two lay witnesses, in response to questions, answered substantially that in their opinions appellee T. Lacy Mayes did not have mental capacity during the months of May, June and August, 1948, to know and understand the nature and extent of his property and the object of his bounty where involved in a business transaction. Those witnesses had known appellee for long periods of time, ranging from twenty-five to sixty years, and were his neighbors. Ten or eleven of them were not related to him in any degree and those remotely related were such as

could not profit or lose by the result of this suit.

The testimony throughout disclosed that appellee and his second wife had lived on the tract of land until the time of her death and while he rented the farm lands out, there is some conflict as to whether he or she attended to the renting and collecting of rentals. Shortly after their marriage in 1940, he made some improvements, like converting an old granary into a suitable house in which to live and during a period of two years he dug a cistern. That they raised a garden and chickens, sold butter and eggs, sold a cow, bought a hog and slaughtered it but he could not remember from whom he bought the hog or what he paid for it. In fact, they did all the commonplace things about the home that such persons ordinarily do. That in July, 1948 he executed two oil leases on land in which he had an interest. It cannot be successfully contended that appellee was without a mind to some degree—he certainly was not an imbecile. However, this is not the test in such matters as we have for consideration. Johnson v. Johnson, Tex.Civ. App., 191 S.W. 366.

Based upon such testimony as that last revealed, appellants argue that at least there were intervals when appellee's mind was good and that he had not discharged the burden of showing that at the particular times the deeds were executed he was mentally incompetent. They cite and rely especially upon Cardinal v. Cardinal, Tex.Civ. App., 131 S.W.2d 1005, 1008, writ dismissed, wherein this expression is found: " * * but the material question pertains to his mental condition at the very time he executed the will or deed." No fault can be found with the quoted language when properly applied to a given state of facts. A careful study of that opinion reveals a situation quite different to the one before us. In the cited case the court pointed out that no witness testified that R. Cardinal's mind was unsound at any time, nor that he ever did any act the consequence of which he did not fully comprehend at the time he did it. The court also recognized the general rule that testimony was admissible to

show a grantor's acts and conduct both before and after such instruments are executed. These are circumstances to be considered by the trier of facts. There can be no doubt that mental incapacity can be proved by circumstances and opinions of witnesses. Moos v. First State Bank, Tex. Civ.App., 60 S.W.2d 888, writ dismissed. In the case before us, the circumstances and opinions covered some years before the deeds were made as well as up to the date of trial, which was October, 1949. Practically all of appellee's witnesses said that based upon their experiences and observations he was without mental capacity to understand his acts in such business transactions during May, June and August of 1948.

A physician, who had seen appellee on May 22, 1948 and tested his blood pressure, said he saw nothing wrong with his mind. While that physician was on the witness stand many hypothetical questions were propounded to him embracing the separate and respective incidents detailed by the lay witnesses, and in response to such questions the doctor said substantially that in such circumstances he would consider appellee to be of unsound mind.

In view of the testimony and the jury's verdict, it is plain to us that the jury gave the greater weight to that part of the conflicting testimony which supported their verdict and when, as here, the evidence is substantial and has much probative value, we may not substitute our own views (if different) for those of the jury. McCasland v. Henwood, Tex.Civ.App., 213 S.W. 2d 555, writ refused, n. r. e., and cases there cited. A jury's verdict on the facts will not be reversed unless it is clearly wrong. Traders and General Ins. Co. v. Scott, Tex.Civ.App., 189 S.W.2d 633, writ refused. We do not believe that situation exists in this case, and points 1, 3, 7, 9, 13, and 14 are overruled.

Points 2, 4, 8, and 10 complain of the submission of special issues 5 and 6 on undue influence by the second wife, Omer Beckham Mayes and by appellants, because of the insufficiency of the pleadings and evidence to raise such issues.

As pointed out in the earlier part of this opinion, appellee plead alternatively that appellants' mother took advantage of the condition of appellee's mind and unduly influenced him at the time to execute the deeds in May and June, 1948. She died in July, 1948, and appellants inherited her estate and are asserting title to the property described in the conveyances.

There was evidence before the jury to the effect that the second wife said before her marriage to appellee that she knew he was "off" at times but that she was going to marry him and get his home and when she died her sons would get it. She told another witness she thought appellee ought to deed one-half of his property to her and asked witness to get her husband to talk to appellee about it. She said she feared death and after the May and June deeds were made she said she was ready to die, that she had gotten everything fixed like she wanted it. She did die the following July. There is evidence that the wife was of a domineering disposition, that she constantly "nagged" at him; she said he did not have sense enough to milk a cow; that he was a low down, half cracked s. of a b. She hit him over the head with a stick; that she never gave him a kind word; that he was weak and submissive to her, never crossing or remonstrating against her wishes. The second wife had her niece take her and appellee to Graham where the doctor saw him on May 22, 1948 and got a lawyer to come to the car, get the data and write the deed that day. The testimony shows without dispute that there had never been any estrangement between appellee and his children; that they corresponded with him, sent him presents and checks occasionally; that the wife had intercepted some of the letters and did not deliver them to appellee; that on one occasion she took a check out of one letter and kept it saying he would never know about it. We think such testimony sufficient to raise the issue of undue influence in so far as she was concerned. There is no direct substantial testimony that the appellant sons ever used any undue influence upon appellee; such could only be surmised by inferences. However, as we view it, from what we shall

presently say, the submission of issues on undue influence became immaterial. At the time of submission of issues to the jury, the court could not know what the findings on mental capacity of appellee would be, and it was proper to submit the issues on undue influence. However, since the jury did find appellee mentally incompetent, the issues and answers as to undue influence became immaterial. The findings on mental incompetency supported the judgment irrespective of what the jury may have found on undue influence. If the jury had found against undue influence, the judgment would have been supported by the other findings. Whatley v. McKanna, Tex.Civ. App., 207 S.W.2d 645, writ refused, n. r. e. In the last cited case under circumstances similar to those before us, it was held that a determination of both mental incapacity and undue influence did not result in a contradictory verdict. It is the settled rule that jury findings on immaterial issues may be disregarded. American Mutual Liability Ins. Co. v. Parker, 144 Tex. 453, 191 S.W. 2d 844, 848.

The jury's findings of a lack of mental capacity in this case will support the judgment. The judgment will be sustained if it is supported by any theory in the case. Rio Bravo Oil Co. v. Staley Oil Co., 138 Tex. 198, 158 S.W.2d 293.

Points 5 and 6 assign error because the trial court refused appellants' motions for an instructed verdict and for judgment non obstante veredicto. From the record it is quite apparent there were jury issues raised and therefore neither of the motions should have been sustained.

Point eleven is not briefed and must be considered waived. Rayburn v. Giles, Tex.Civ.App., 182 S.W.2d 9, writ refused; Landwer v. Fuller, Tex.Civ.App., 187 S.W.2d 670, writ refused, w. o. m.

Twelfth point complains because of what may be termed improper conduct of opposing counsel. At a time when B. L. Mayes, who prosecutes this suit as next friend, was testifying, appellants' counsel, repeating the witness, had stated that he had gone to the home of one of the appellants to get his father and take him to a hospital, and that the appellant would not let witness take appellee away, then inquired if it was not a fact that the appellant referred to was a paralytic. To which last question appellee's counsel objected, and during the controversy over that objection appellee's counsel said: "Well, will you let us have him now?" Obviously the question was not asked to the witness, for he it was who apparently had tried to get custody of his father; it must have been addressed to appellants' counsel; he interposed an objection to the question and countered with: "Why didn't you come for him a year ago." The court overruled the objection and appellants' counsel excepted. Sidebar remarks, unprovoked and sarcastic statements or irrelevant questions to and between counsel should not be tolerated during a trial, while trying to arrive at facts from a witness. In this instance it may be questionable as to which, appellee's or appellants' counsel, got the better by the two unfair questions asked each to the other. Two wrongs never make a right. Our courts make no distinction in the prejudice evoked between the parties in such matters. Each doubtless intended to impress the jury by their respective questions. However, appellants are complaining here; when counsel objected, he gave no grounds nor did he request that the jury be instructed not to consider the inquiry made by appellee's counsel, nor if the question was one that its effect could not be cured by an instruction, did they ask that a mistrial be declared. In these circumstances the matter was waived. A similar situation was held harmless error in Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558.

Finding no error in this record for which the judgment should be reversed, all points are overruled and the judgment is affirmed.

### On Motion for Rehearing.

Appellants' motion for rehearing calls our attention to an inaccurate statement in the second paragraph of our opinion in which we included the deed of May 22, 1948 with the other deeds in controversy as being canceled by the judgment of the court below. A careful examination of the judgment as entered discloses this to be

an error since only the deeds of June 3 and August 2, 1948 were canceled by the judgment. However, this does not alter the conclusions reached by us in the original opinion. It is undisputed in the record that subsequent to the May 22, 1948 deed, appellee and his wife conveyed the same property to a trustee, who in turn conveyed it to appellee and he, on June 3, conveyed a slightly different interest in the mineral rights to his wife and that being the only then effective deed under which she held and the judgment having canceled that deed, the appellants took nothing as heirs of their deceased mother because of the deed of May 22, 1948. With this corrected recitation of the judgment, the motion for rehearing is overruled.