## McCASLAND et al. v. HENWOOD.
### No. 6362.

Court of Civil Appeals of Texas. Texarkana.

June 17, 1948.

Rehearing Denied Sept. 9, 1948.

Carney, Carney & Mays, of Atlanta, for appellants.

Otto Atchley, of Texarkana, and Robert F. Salmon, of Linden, for appellee.

HALL, Chief Justice.

The following clear and concise statement of the case made by appellants in their brief and admitted by appellee to be correct, is adopted by this court:

"Pete McCasland, individually and as next friend of his four children, all residents of Cass County, Texas, filed this suit in the District Court of Cass County, Texas, against Berryman Henwood, Trustee for the St. Louis Southwestern Railway Company of Texas, alleging the death of his wife, Erline McCasland, and permanent and incapacitating injuries to himself as the result of a collision between an automobile driven by plaintiff McCasland and a train operated by the defendant on the defendant's railway track near the community of Eylau, in Bowie County, on the night of December 2, 1944. Plaintiff pleaded, among other things, that the railroad track of the defendant at the place of the collision was elevated above the normal road bed and that the view of the railway crossing at that point was so obstructed by bushes, weeds and trees that the particular crossing constituted a more than ordinarily dangerous or extra-hazardous night time crossing, which facts were known by the defendant; and plaintiff pleaded specific acts of negligence on the part of the defendant in failing to have a watchman, flagman or automatic signaling device at said crossing, defendant's failure to maintain the crossing in proper condition for the safety of travelers approaching the crossing, and that defendant allowed its train to obstruct the crossing for an unreasonable period of time prior to the collision. Plaintiff sought damages for his personal injuries, his automobile and hospital and medical bills in the total amount of $74,160.30, and damages for his minor children in the amount of $25,000.00 for the loss of their mother. R. P. Bobo, and wife, Maudie Bobo, father and mother respectively of the deceased wife of plaintiff, intervened in the suit and adopted the petition of plaintiff seeking the sum of $3,000.00 for the loss of their daughter's contributions to their support.

"The defendant answered, pleading, among other things, that the collision was an unavoidable accident, that said crossing was a safe crossing for travelers approaching it, and various specific acts of contributory negligence on the part of plaintiff, Pete McCasland. The jury, in answer to fifty-three special issues submitted to it by the court, found that the crossing was not more than ordinarily dangerous as a night time crossing and that the defendant was not negligent in failing to provide a mechanical signaling device or flagman at the crossing at the time of the collision; in defendant's favor as to issues involving discovered peril; in plaintiffs' favor with respect to all of the issues involving alleged contributory negligence on the part of plaintiff; that the collision was the result of an unavoidable accident; and found that plaintiffs and intervenors were entitled to $21,000.00 in apportioned amounts."

The court rendered judgment for the defendant on the verdict and plaintiffs and intervenors have duly perfected their appeal to this court.

Appellants assert by their first point that the trial court erred in refusing to grant them a new trial because of the misconduct of the jury in discussing the effect of certain of their answers while deliberating on the case. The particular alleged misconduct to which our attention is directed by this point relates to certain discussions in the jury room by one or more jurors to the effect that it was immaterial how they answered certain of the special issues; that the appellants would still get their damages assessed by the jury in the answer to the last special issue.

This case arises out of an injury to appellant McCasland and the death of his wife which occurred at a railway and public road crossing known as Eylau crossing. This crossing is formed by the appellee railway company's track and a public highway referred to in the record as the old T. & P. Dump Road. Appellee will hereafter be referred to as "the railway" and the Dump Road as "the highway." The railway and the highway cross each other at right angles. The highway is graveled and is quite extensively used by the public since the construction of the war plants west of Texarkana. This highway intersects State Highway No. 11 at what is known as Baker's store. A great number of persons traveling from the towns of Atlanta and Queen City and surrounding territory travel State Highway No. 11 to Baker's store and then turn off to the left onto the highway in question to the war plants west of Texarkana. (The evidence shows that the railway track is from 2½ to 4 feet above the level of the highway crossing). McCasland together with his wife and another party were traveling the highway from the south at about 11 o'clock at night when they drove their car into a freight train of appellee which was moving slowly along said crossing. Appellants' automobile struck the third or fourth oil tank car from the engine and about thirty-eighth or thirty-ninth car from the caboose. Pete McCasland, the driver, was seriously injured and his wife and a party traveling with them were killed. The highway to the south begins to rise at a place variously estimated by the witnesses as being anywhere from 35 feet to some 200 or more yards from the crossing. It is appellants' contention that the highway a short distance from the track makes an abrupt rise to go over the railway tracks, and that on account of this abrupt rise he was unable to see the freight train across the highway in time to avoid the collision. Witnesses for the railway describe the highway as being a gradual incline from a point some 200 yards south of the railway tracks to the crossing.

The first issue submitted to the jury is: "Do you find from a preponderance of the evidence that the conditions surrounding the crossing in question on or about December 2, 1944, were such as to render that crossing more than ordinarily dangerous as a night time crossing?" To which the jury answered "No."

Issue No. 3 is: "Do you find from a preponderance of the evidence that defendant's failure to provide a mechanical signal or other mechanical signaling devices at said crossing constituted negligence under the facts, circumstances and conditions at the time of the collision in question?" To which the jury answered "No."

Question No. 4 was not answered.

Issue No. 4a is: "Do you find from a preponderance of the evidence that the failure of the defendant St. Louis Southwestern Railway Company of Texas to have a flagman stationed at said crossing at the time of the collision in question was negligence?" To which the jury answered "No."

The jury also answered that the collision was the result of an unavoidable accident and acquitted appellants of contributory negligence. After the jury had retired to consider their verdict and before they had answered issue No. 1, they propounded to the court the following question: "We want to know if the way we answer questions will affect the dollars and cents?" To this query the court replied: "Gentlemen of the Jury: You are not concerned with the effect of the answers, and you will answer each question as you find the facts to be." After this occurrence the jury answered the special issues and returned their verdict into court.

Upon a hearing on the motion for a new trial in the court below considerable evidence was introduced from the jurors with respect to discussions by them in the jury room in arriving at their verdict. Practically the entire jury panel testified. There was considerable discussion by the jury with respect to the answer to Special Issue No. 1. Most of the jurors testified that there was mention made during their discussion with respect to their answer to this issue after they had received the charge of the court set out above, to the effect that it didn't make any difference how the issue was answered, that appellants would get their damages anyway, or words of similar import, and some of the jurors agreed to answer issue No. 1 in the negative on account of this discussion. However, with respect to Special Issue No. 3, and Special Issue No. 4a there is positive testimony to the effect that no such discussion was had with respect to these issues, and there is also positive testimony that these issues were answered before the inquiry by the jury to the court as to the effect of their answers. In fact there seems to have been no serious trouble in answering any of the issues except Issue No. 1. Issues 3 and 4a clearly absolve the railway of negligence. So the trial court, as the trier of the facts upon the motion for a new trial, had a right to conclude under the testimony given by the jurors that the answers of the jury to questions 3 and 4a acquitting the railway of negligence, were in no wise tainted by the alleged misconduct of the jury in making their answer to Issue No. 1. In passing upon this motion the trial court, as stated above, was the trier of the facts and as said in Glenn v. Glenn, Tex.Civ.App., 183 S.W.2d 231: "A reviewing court will not disturb the verdict of the jury or the findings of the trial court (when trial is without a jury) where there is some evidence to support the same, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him. Underwood v. Security Life & Annuity Co., 108 Tex. 381, 194 S.W. 585." See also Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. Assuming then that the jury was guilty of misconduct in discussing the effect of their answer to Special Issue No. 1, and the discussion was of such nature as to make void the answer to said issue still as stated above, the answers of the jury to issues 3 and 4a are sufficient to form the basis of the judgment entered by the court below for the railway. This is true even though issue No. 1 had been answered in the affirmative. This point is overruled.

By their second, third and fourth points appellants assert that the trial court committed error in admitting in evidence certain photographs taken by the railway's witness of the highway, the crossing, and the general physical condition at the place where the collision occurred, for the reason that said pictures were taken many months after the collision and some of them taken during a rain. The railway admitted that the pictures were taken several months after the collision and that some of them were taken during a rain and that some of the trees or brush and other objects had been removed or cleared up. It was a seriously disputed issue as to whether the highway had been raised at a point about 35 or 40 feet south of the crossing after the collision and before the pictures were taken. Several witnesses testified for appellants that the highway had been raised as much as a foot and witnesses for the railway testified that it had not been raised at all. In our opinion these pictures were properly admitted in evidence. The testimony offered would not affect their admissibility but their weight before the jury. Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763; See also Bilbrey v. Gentle, Tex.Civ.App., 107 S.W.2d 597 (error refused); San Antonio v. Talerico, Tex.Civ. App., 78 S.W. 28; Dallas Ry. & Terminal Co. v. Durkee, Tex.Civ.App., 193 S.W.2d 222; Hovey v. Sanders, Tex.Civ.App., 174 S.W. 1025 (error refused).

We have examined point No. 5 presented by appellant and conclude that under the circumstances of this case same does not present error.

The judgment of the trial court is affirmed.