BRAMLETT et al. v. JENKINS et al.

No. 15139.

Court of Civil Appeals of Texas.
Fort Worth.

June 2, 1950.

Rehearing Denied June 30, 1950.

Rawlings, Sayers, Scurlock & Daly, and Nelson Scurlock; all of Fort Worth, for appellant.

Wade, Davis & Callaway, and H. C. Wade, all of Fort Worth, Texas, attorneys for appellees, Mrs. Tillie Jenkins, Edith Huckaby and N. M. Rust, Jr.

Donald G. Gay, of Dallas, Texas, attorney for appellees, Jimmie Kilde and Ed Kilde.

SPEER, Justice.

Appellees, Mrs. Tillie Jenkins, Ethel Huckaby, both widows; C. M. Rust; N. M. Rust, Jr.; and Jimmie Kilde (formerly Jimmie Cassady), joined by her husband, sued appellant Carrie Bramlett along with her husband and E. A. Rust to recover 5/6ths interest in an undivided one-eighth interest in three described tracts of land in Rusk County, Texas, and for certain moneys alleged to have been collected by Mrs. Bramlett for oil runs from the land.

The parties, aside from the husbands of Mrs. Kilde and Mrs. Bramlett, are the adult children of N. M. Rust and his wife, both deceased. Defendant E. A. Rust filed a disclaimer and went out of the case. At a trial to the court each of the appellees other than C. M. Rust recovered a one-sixth interest in the land and a two-sixths interest was awarded to defendant below, Mrs. Carrie Bramlett. Dissatisfied with the award, Mrs. Bramlett has appealed.

No findings of fact or conclusions of law were requested or filed. The judgment is in short form and recited no specific fact findings upon the contentions of the respective parties. The effect of the judgment was that the court resolved the controverted fact issues in favor of appellees' contention.

Much of the testimony is documentary, consisting in part of deeds, pleadings, judgments and executions in three or four former suits between some of the parties here; assignments of judgments, checks and payments for assignments of judgments and a written memorandum made simultaneously with one of the deeds. The oral testimony of the respective parties, which apparently controls this appeal, was very conflicting as is too often the case where families fall out and fight in the courts.

Matters necessary to be discussed in this appeal will be confusing enough to the reader's mind without bringing in secondary issues. We shall refrain as far as possible from losing sight of the factors which will control the result to be reached.

Prior to 1934, N. M. Rust, father of most of these parties and deceased at the time of trial, owned the one-eighth undivided interest in controversy. N. M. Rust executed a deed to his son, C. M. Rust, covering the interest here involved, dated and acknowledged on February 7, 1934. There is inferable testimony that the deed was in fact executed in 1936 and dated back to 1934; the testimony is conflicting in this respect. All parties admitted, however, that when the deed was made grantor was having trouble with his son E. A. Rust, who was claiming that his father was indebted to him and had sued the father for several thousand dollars. Pending that suit the father executed the deed to another son, C. M. Rust, definitely to prevent E. A. Rust from getting the land if he should eventually recover judgment against the father. Appellants and appellees all knew that conveyance was not a bona fide one and that the land remained the property of the father.

In September, 1941, E. A. Rust did obtain judgment against the father for $992.50, and C. M. Rust (who then held legal title to the land in trust), with the consent of the father, purchased the judgment from E. A. Rust, paying him $1100 for it and took an assignment of the judgment on January 23, 1942.

Early in 1942, appellant Mrs. Bramlett, a daughter of N. M. Rust, proposed to C. M. Rust and the father that she would buy the judgment so as to get interest on her money. The judgment was sold to her by C. M. Rust and she was to have a deed to the land from her father and C. M. Rust and would collect the oil runs, give her father stipulated parts of it, retain the remainder until she got her $1100 and interest back, and would then reconvey the land to the father or his estate if he was not living. The controversy here revolves around her agreement to reconvey. Some

witnesses said she did so agree, while Mrs. Bramlett contends that she only agreed to do so on certain conditions, which conditions she claims never happened.

In consummating the deal by which appellant purchased the judgment, three instruments in writing were executed to carry the deal into effect, and while there is a discrepancy of one day in the dates, all parties treat them as constituting a single transaction. Appellant wanted the deed to be signed by both her brother and father for she said she knew the latter really owned the land. On March 9, 1942, N. M. and C. M. Rust executed the deed to appellant; on March 10, 1942, C. M. Rust, in consideration of $1100 cash paid to him by Mrs. Bramlett, assigned the judgment to her, and on the same day appellant wrote the following document:

"March 10, 1942.

"Mr. N. M. Rust.
"Dear Dad:

*This Is My Agreement To You*

"I will give you $25 per month as long as you live and as long as the oil check is $40 per month and over. And if the oil check gets larger from month to month I will give you more money if you need it. In other words our last oil check was $54.90. Will say, if the oil check gets to $60 per month and you need more money I'll give you $30 per month, and if it gets to $70 per month I'll give you $35 per month, and so on. And at your death after I get my $1,100 back and all other money that I have advanced you from time to time, I will turn it back to your estate if you want me to, but I would want you to give it to me in writing prior to your death, as to how you want me to distribute it to your estate. In other words you might want me to deed it to one certain party, or you might want me to give so much money to this one and so much money to that one. That, is why I would want you to give it to me in writing prior to your death, because you may change your mind several times as to what you might want done. Now I don't think I will have to, but in case I have to pay the John A. Kee judgment I am not going

to deed it back to your estate because I think I have done my part toward you. In other words, I am doing more for you than any other child you've got would do, and under those conditions I don't think you would want me to.

"(s) Mrs. Carrie Bramlett
"    N. M. Rust."

Although the above document was written to the father, apparently he signed it also and it is because the father never gave appellant the requested written instruction in the foregoing document that appellant contends that the deed passed to her fee simple title. She also testified that her father told her he wanted her to have the land. The date of such statement by the father is not shown; there is evidence of contradictory statements by the father.

N. M. Rust, the father, died testate February 19, 1944; his will dated December 30, 1935, was duly probated, naming N. M. Rust, Jr., independent executor. It is sufficient to say that by the will the father bequeathed this property to his six named children in equal parts. These legatees are the appellant Mrs. Bramlett and appellees. Testator specifically omitted his son, E. A. Rust, from the bequest for reasons mentioned in the will.

John A. Kee recovered a judgment against N. M. Rust on September 9, 1936; the judgment recites that it was based upon two promissory notes executed in 1931. Execution was issued on that judgment and levy made on described machinery, and sale made for approximately $15.00. Neither C. M. Rust, to whom the land had been conveyed, nor appellant ever paid anything on the judgment, nor was either ever requested to do so. The judgment is referred to in the memorandum above set out. E. A. Rust testified that he received from Mrs. Bramlett $400 and that he agreed to hold her harmless from that judgment. In the judgment from which this appeal was taken appellant recovered back the $400 she had given to E. A. Rust along with other items of expense incurred by her.

The record shows that in a suit by C. M. Rust against Carrie Bramlett, appellant here, judgment was entered on October 7, 1948, in favor of Mrs. Bramlett and based on that judgment the court in this case awarded to appellant a two-sixths interest in the land in controversy and refused a recovery by C. M. Rust for any interest in the property in the judgment before us.

Appellant relies on four points of error for reversal. One and two, in substance, are error of the court: (1) In holding that appellant could not retain the land under the memorandum of March 10, 1942; (2) in holding appellant could not retain the land when appellees had not proven that the father desired that she reconvey the land to his estate since he did not express such desire in writing in compliance with said memorandum. These points are briefed together.

Under these points appellant contends that by the conveyance to her by the father and brother, who held the title in trust for the father, the purchase of the E. A. Rust judgment, the memorandum hereinabove set out, and the failure of the father to give her the written instructions she requested in that memorandum had the effect to invest her with title to the land in controversy.

■ The effect of the judgment entered is against appellant's contentions in this respect. As we view the record as a whole, it is quite obvious to us, and the trial court so believed, that after E. A. Rust had obtained his judgment and C. M. Rust had purchased and taken an assignment of it, the danger of E. A. Rust getting the property in satisfaction of his judgment was past. The subsequent transaction between the father, the trustee C. M. Rust and appellant was a separate and distinct one. This because when the father and trustee joined in the conveyance to appellant, it had the same effect as if the trustee had reconveyed to the father who was the real owner, and he in turn conveyed to appellant. If the latter transaction was in fraud of creditors, such fraud must be found in that transaction alone. The factual situation before us is distinguishable from those in such cases as

Farrell v. Duffy, 5 Tex.Civ.App. 435, 27 S.W. 20, writ refused, cited and relied upon by appellant. It is quite apparent from the testimony that the transaction had with appellant was one carried on and consummated between the three, the father, C. M. Rust and appellant. She testified in effect that her father wanted to put the property in her name because he was afraid that John A. Kee or some other creditor might take it away from him. C. M. Rust testified in substance that there was no discussion by the father in connection with the conveyance to appellant in regard to an indebtedness or a judgment owing to Kee. Both witnesses were parties to the suit and equally interested in the result. In support of the judgment entered, there is the implied finding of fact in this respect against the testimony of appellant.

■ Appellant wanted to buy the judgment and get the interest on her investment during the time it was being repaid from oil runs; to collect the oil runs she needed legal title in her name. There is testimony to the effect that she agreed to take the judgment and deed until she was repaid and would then reconvey the property to the father's estate. The conveyance and assignment of the judgment were then made to her. She admits that she received enough from the oil runs to repay her. Her contention here is that since the father did not give her written instructions as to whom the land should be reconveyed, as requested in the memorandum, her father intended that she should keep it. We do not nor did the trial court so construe the memorandum. This document, the assignment and the deed must be construed as constituting a single transaction having a valuable consideration. 10 Tex.Jur. 286, sec. 166; 3 Tex.Jur., 10 year Supp., p. 266, sec. 166. Except as herein indicated, there is no dispute between the parties as to the purposes for which the assignment and deed were executed. If it could be said that the memorandum rendered those purposes uncertain or ambiguous, then parol testimony was admissible to explain the true purpose and intention of the parties. A careful analysis of the language used in the memo-

randum fails to disclose any intention upon the part of either the father or appellant that she was to have fee title to the land. It is more definitely certain by the memorandum that their mutual intention was that when appellant received the full sum of her investment with interest thereon from oil runs she could reconvey the property, which the circumstances show was held by her in trust and as security for her debt. This is true notwithstanding the clause, "I will turn it back to your estate if you want me to." The quoted clause is referable to a contingency that might transpire before she should have been paid in full. Appellant having taken the property in trust for a specific purpose, that is, to insure the payment of her debt, death of the beneficiary or owner of the equitable title as between the parties would not have relieved her of a reconveyance to the beneficiary's estate if nothing had been said about it when the deal was consummated.

The fact that appellant wanted her father to give her written instructions as to whom it should be reconveyed is indicative of her knowledge that she was not getting fee title, and if she was not getting such title she could not have altered the trust by her expressed desire, and a noncompliance of the request by the father.

■ . The latter part of the memorandum has reference to the doubtful contingency of appellant's being required to pay the Kee judgment. It is undisputed that she did not pay that judgment and was never requested to do so. In any event, when the property goes to the legatees under the father's will the judgment creditor's rights will not be impaired.

■■ The substance of appellant's testimony is that her father told her (time not shown) that he wanted her to have the property; while, on the other hand, C. M. Rust, the former trustee, said substantially that the father told him it was all right to carry the property in appellant's name since he intended that it should finally go to his heirs anyway, just so one of the named sons got no part of it. The same witness also testified that when appellant approached him to buy the judgment, he told her he would convey the judgment and land to her if she would give the father a part of the oil runs and use the remainder to repay her debt and when she got her money back she would reconvey the property to the estate, and she, the appellant, said she would be glad to do that. Another sister, one of the appellees here, testified in substance that she talked with appellant shortly after the assignment and deed were made and appellant explained that when she got her money back with interest she had agreed to deed the property back according to the father's will. These and other conflicts in the testimony have prompted the trial court to construe the several documents in the manner indicated by the judgment and to resolve the conflicts in the testimony against the contentions of appellant. When the testimony is conflicting, as here, the trier of facts must weigh the testimony and give such credence to the witness as he deems proper and enter such judgment as he thinks is fairly justified. If the facts are expressly found, or if none are found and filed, those impliedly found having support in the testimony, as a general rule, are binding on the appellate courts. McCasland v. Henwood, Tex.Civ.App., 213 S.W.2d 555, writ refused, n.r.e.

Under points three and four appellant contends that since it conclusively appears from the testimony that the first conveyance to C. M. Rust and the one by the father and C. M. Rust to appellant were made in fraud of creditors, that the court erred in permitting appellees to recover the interest awarded to them in the property from appellant. It is contended that the father, who was the recognized true owner, had thus fraudulently conveyed the property, and, under cited decisions, could not recover the property from the trustee and the father having died in the meantime, his heirs and legatees could not recover it.

Under the above points it is argued that the conveyance from the father and C. M. Rust to appellant was void under our statutes of Fraudulent Conveyances. In so far as is necessary to state here, Article 3996, Vernon's Ann.Civ.St., provides: "Every * * * conveyance * * * or other writing given with intent to delay, hinder

or defraud creditors * * * of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, * * * be void." From this we may note that such conveyances are not void except when made with *intent* to delay, hinder or defraud creditors.

■ We recognize the settled rule in this state that where real estate is conveyed by a grantor "with intent to delay, hinder or defraud creditors" and there is a secret agreement between grantor and grantee that the latter will reconvey to the former, courts will not enforce such agreement but leave the parties where they placed themselves. 20 Tex.Jur. 462, sec. 103. The same authority announces the further rule that the foregoing principle is not applicable if the conveyance was not made with the intent to delay, hinder or defraud creditors. The question then before us is, was the conveyance by N. M. Rust to appellant made with the intent to delay, hinder or defraud creditors?

■ It is the general rule that whether or not a conveyance is made in fraud of creditors is one of fact for determination by the trier of facts in each case. 20 Tex. Jur. 528, sec. 176; 5 Tex.Jur., 10 year Supp., 219, sec. 176, and the many cases cited in the footnotes of both compendiums.

Granting as contended by appellant that the conveyance to C. M. Rust, whether in 1934 or 1936, as the conflicting testimony shows, was in fraud of E. A. Rust, that transaction was closed; that judgment had been paid to the creditor and the property, by the means employed by the parties, had been reconveyed by C. M. Rust to the father who was the real owner, and, as we view it, was not in any way involved in the subsequent transaction between the father and appellant.

■ Since under the rule of law above announced, if the trial court had found that the conveyance to appellant was in fraud of creditors, he could not have entered, as he did, a judgment for appellees to recover the land in this case. While upon the other hand, unless the conveyance was in fraud of creditors, he could, and, we think in equity

and all good conscience, should have awarded the title as he did. The effect of the judgment in this case is that the conveyance to appellant by her father was not in fraud of creditors. In cases like this, when tried to the court, and no fact findings are filed and the testimony is conflicting either by direct testimony or by conditions and circumstances which tend to cast a doubt or suspicion on the testimony of an interested party, the court must determine the conflicts, and having done so and there is substantial testimony to support his implied findings, appellate courts will view only the testimony in the light most favorable to the judgment, and, if found to be sufficient, will ordinarily sustain the judgment. McCasland v. Henwood, Tex.Civ.App., 213 S.W.2d 555, writ refused, n. r. e.; O'Ferral v. Coolidge, Tex.Sup., 228 S.W.2d 146. In such circumstances it will be presumed that the trial court resolved the conflicts in such way as to support the judgment entered. 3-B Tex.Jur. (Rev.) 376, sec. 913.

■ We believe the trial court was correct in his construction of the written documentary evidence and in his implied findings of fact. There is nothing in the three instruments executed in connection with the assignment of the judgment and conveyance to appellant which would necessarily mean they were in fraud of creditors. If the transaction was not made with intent to defraud creditors, then the court was correct in awarding the title as he did.

At the time involved here the father, N. M. Rust, had no property subject to execution except that interest in the land in question. The record shows that he owed two creditors, one of whom was appellant who was purchasing the E. A. Rust judgment for $1100 in cash. The other creditor was John A. Kee, who also held a judgment against the father. The testimony warrants the implied finding by the trial court that appellant wanted to buy the judgment as an investment and would accept a deed to the property vesting legal title in her so that she could collect the oil runs and apply a portion thereof to the liquidation of her judgment with interest. It is also apparent that even though the conveyance was in

form of a deed, it was intended by the parties as in trust for securing payment of the judgment, and that when the judgment was paid the land would be reconveyed either to the father or if he was not living then to his estate.

The whole transaction clearly indicates that the father wanted to pay appellant for the judgment she had purchased and entered into the matters herein detailed to accomplish that purpose. It may be said also that he wanted to pay appellant before any other or the remaining creditor received anything. Our statutes do not prohibit or penalize a debtor who prefers one creditor over another. In 20 Tex.Jur. 422, sec. 65, it is said: "It is an elementary principle, reiterated in a multitude of cases, that in the absence of a law declaring preferences invalid every debtor, though insolvent, has the legal right to pay one or more of his just debts with any money or property he has * * *." It seems to us that this is just what N. M. Rust did in this instance. It does not follow that when he did a thing he had a legal right to do, that such act was necessarily with *intent* to defraud the other creditor or deprive him from reaching property or a fund that he was otherwise entitled to, although such a conveyance might have the effect of depriving the other creditor of reaching it.

It is very true that in cases of preferment of one creditor over another, the transfer or conveyance of property to the creditor for that purpose must be confined to values reasonably sufficient to pay the preferred debt but with the burden of proof upon the complaining creditor to show that the transfer was with the intent to defraud him. In the instant case the value of the property conveyed to appellant was not shown except by inferences, such as that it was an undivided one-eighth interest in a large tract of oil producing land and that the estimated oil runs on the interest involved here ranged from $40 to $50 or more per month, and out of these amounts the grantor was to receive approximately half each month. It is common knowledge that oil production will in time cease; this land had been producing at

least for the past eight years. If another creditor had attacked this conveyance as an illegal excessive preference to appellant and had prevailed, he could only have recovered the excess over and above such interest as would have paid appellant's judgment debt.

We may not presume that the transaction between appellant and her father was illegal, especially in view of the fact that the father had the right to make the preference to her over other creditors, nor will it be presumed that the father did not intend to pay the other creditor. But if a presumption be indulged at all, it must be that the father intended to pay his just debts. The implied findings of the trial court are to the effect that the parties intended that as soon as appellant received payment from the security she would reconvey the property to the father if he was then living, or to such person as he should designate, or to his estate if he was not then living. It is equally as consistent that if the father had been living at the time appellant was paid he would have ordered the property conveyed to his other creditor until he was paid, just as he had done with appellant, as to say that he would then have secreted it in some other way from a creditor. The judgment as entered awards the title to the legatees of the deceased father, and it must follow that the rights of creditors have not been illegally or wrongfully impaired.

It is to be noted that all parol testimony in this case came from interested parties and as a general rule such testimony only raises an issue to be determined by the trier of facts. This rule is especially applicable when, as in this case, the testimony is conflicting or even if such testimony be not specifically contradicted by other testimony if the surrounding circumstances and conditions tend to discredit or impeach it; nonetheless it only presents an issue of fact to be determined by the court sitting in lieu of a jury. McGuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d 722.

We have concluded that the controlling elements in this appeal depend upon the facts involved, including a proper construction of the written documents, and

since we believe the trial court has properly construed the documentary evidence and determined the facts upon competent testimony, construed in the light most favorable to the judgment, as shown by the implied findings in support of the judgment as entered, it is not within our prerogative to set them aside and hold differently.

All points of error are overruled and the judgment is affirmed.

### On Motion for Rehearing

Appellants, Mrs. Bramlett and husband, have filed a motion for rehearing in which, among other things, they call our attention to an erroneous statement made by us in the opinion. In a reference to an amount Mrs. Bramlett recovered back, we said she recovered an item of $400.00 which she had paid to her brother, E. A. Rust, for a special purpose. So much of the statement that she recovered back this particular item is incorrect. She did recover judgment for $668.57 for necessary expenses incurred by her as trustee of the property, but the $400.00 item above mentioned was not included. She was found to be entitled to the items of expenses to be repaid from the oil runs. There was no controversy about her right to expenses, and neither those expenses nor the $400.00 item is material to this appeal; but in the interest of accuracy we gladly make the correction. What we have said here does not affect the conclusions expressed in the opinion and cannot form the basis of a second motion for rehearing. With this correction, the motion for rehearing is overruled.