**GRIFFIN**

v.

**McCULLOUGH TOOL CO. et al.**

No. 15476.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 29, 1954.

Rehearing Denied Feb. 26, 1954.

Rogers & Eggers, and Guy Rogers, Wichita Falls, for appellant.

Walter Nelson, Jr., Eugene Sherrod, Jr., Wichita Falls, Fleming A. Waters, Cisco, and Edwin Luecke, Wichita Falls, for appellees.

RENFRO, Justice.

Johnnie P. Griffin, appellant herein, filed suit against Halliburton Oil Well Cementing Company, Bethlehem Supply Company, McCullough Tool Company, Eastman Oil Well Survey Company, Jarecki International Supply Division of H. K. Porter Company, E. K. Burt, E. M. Burt, J. C. Mann, Jr., E. P. Griffin, his trustee in bankruptcy, K. C. Spell, Jr., and Robert W. Reynolds, alleging that on October 1, 1949, the defendant E. P. Griffin (her son) executed and delivered to her an installment deed of trust note in the principal sum of $32,500, payable in one, two and three years after date, and at the same time executed and delivered to Jerome S. Stone, as trustee, a deed of trust fixing a lien upon property situated in Brown, Archer and Wichita Counties, to secure the payment of the above-mentioned note, alleging that her lien was second to a first and prior lien in favor of the City National Bank in Wichita Falls and that the first lien had been foreclosed and the sum of $9,280.55 obtained by the Bank in excess of its debt had been paid into the registry of the court to be apportioned between lienholders as their interests appeared. It was alleged that the other defendants hereinabove named, except E. P. Griffin and his trustee in bankruptcy, K. C. Spell, Jr., were asserting some lien upon the property covered by appellant's deed of trust, and alleged that such liens or equities, if any, were inferior and subordinate to appellant's lien.

The appellees in their answer set out the dates and amounts of the judgments held

by them against E. P. Griffin, and by way of cross-action prayed for cancellation of a mineral deed from E. P. Griffin to Johnnie P. Griffin, dated April 14, 1949, and the above-mentioned deed of trust, alleging that such instruments were made with the intent of defrauding the creditors of E. P. Griffin and placing his property beyond reach of execution on their respective judgments. Bankruptcy proceedings were filed subsequent to the filing of the original petition. The trustee in bankruptcy adopted the pleadings of the appellees.

The case was tried before the court without a jury, and judgment was rendered setting aside the above two instruments and ordering the $9,280.55 in the registry of the court paid to appellees. Said judgment further found that Johnnie P. Griffin holds in trust for E. P. Griffin or his creditors certain moneys on account of the above-mentioned mineral deed, and that the defendants have judgment against her for $6,-753.26.

The court did not file separate findings of fact and conclusions of law but the judgment recited that the two instruments "were both fraudulently given by grantor and received by grantee with the intention of defrauding, hindering, and delaying creditors of E. P. Griffin and of placing the property purporting to be affected by such Deed of Trust and Mineral Deed beyond the reach of execution on the judgment of said creditors."

The judgment recited that defendant Mc-Cullough Tool Company had been fully and finally satisfied, and decreed that it take nothing by reason of its cross-action. The said McCullough Tool Company has not appealed. The trustee in bankruptcy has not appealed. The appeal before us is by the original plaintiff, Mrs. Johnnie P. Griffin.

The appellant insists the mineral deed was a valid deed and the court erred in setting it aside.

The deed recites a consideration of $19,-500. The consideration was arrived at, according to appellant, by adding $16,000, which she had paid to a bank as co-signer of a note with E. P. Griffin, who will hereafter be referred to as Eph, and $3,500 loaned to him on December 7, 1948.

The deed was dated April 14, 1949, and purported to convey "all of my oil, gas and mineral interest in Archer and Wichita Counties, Texas, that is not now covered by an oil and gas lease."

■ It is well-settled law in this state that a creditor may receive payment of an honest debt in property of his debtor, though he may know at the time that the debtor's intent in making the payment is to prefer him and to place the property beyond the reach of other creditors, provided that no more property is taken than is reasonably necessary to pay his debt. Adams v. Williams, 112 Tex. 469, 248 S.W. 673; Bramlett v. Jenkins, Tex.Civ.App., 231 S.W.2d 539; Mewhinney Mercantile Co. v. Goodnight, Tex.Civ.App., 135 S.W.2d 230; 20 Tex.Jur., p. 423, sec. 65.

Eph acknowledged that at the time he executed the deed he owed between $450,000 and $500,000 and he was unable to meet his obligations. Mrs. Griffin acknowledged that she knew Eph could not meet his obligations as they became due at that time.

Both appellant and Eph testified they did not know the value of the interest conveyed by the mineral deed. Evidence was introduced to the effect that the mineral interest conveyed by said deed exceeded $45,-000 in value.

■ "Where the creditor receives an unreasonable amount of property from a failing debtor in payment of his debt, the law will make no estimate of how much would have been reasonable, for the purpose of sustaining the conveyance as to that much, and vitiating it as to the remainder, but will set aside the whole transaction." Black v. Vaughan, 70 Tex. 47, 7 S.W. 604, 605.

It was admitted by Eph that he owed the debts to appellees prior to the date of the mineral deed.

In light of the foregoing evidence, we are bound by the implied findings of the trial court that the interest conveyed was more than reasonably sufficient for Mrs. Griffin's debt, and that as of April 14, 1949, Eph was not possessed of property within the state sufficient to pay his existing debts.

Appellant contends the appellees failed to show what land, if any, was covered by the mineral deed and the court erred in rendering judgment for appellees for $6,753.26, and further that there was no basis upon which it could be determined how much land was covered by the mineral deed.

The statement of facts shows an exhaustive probing to determine just what interest passed under the deed. We will not detail the evidence but find that there is sufficient evidence to uphold the trial court's judgment finding that Mrs. Griffin had received in bonuses and rentals under the mineral deed the sum of $6,753.26. It follows that such sum, the mineral deed having been canceled by the court, was properly awarded to appellees.

Appellant argues by appropriate points of error that the trial court erred in cancelling the deed of trust, and in awarding the $9,280.55 in the registry of the court to appellees.

It is the general rule that whether or not a conveyance is made in fraud of creditors is one of fact for determination by the trier of facts in each case. 20 Tex. Jur., p. 528, sec. 176; 5 Tex.Jur. Ten Year Supp., p. 219.

Appellees had to depend largely on the testimony of appellant and Eph to adduce the facts surrounding the transaction.

In the latter part of May, 1949, Eph suffered a brain injury which necessitated an operation and extensive medical and hospital expenses. Mrs. Griffin paid the bills.

On October 1, 1949, appellant had a deed of trust prepared and Eph executed it. The recited consideration was $32,500. On the trial she testified that the consideration was arrived at by adding $25,000 loaned to Eph in 1940 and smaller loans and advancements made at later dates, making a total indebtedness of $37,646.

Eph's testimony was inconclusive as to his indebtedness to his mother. At one time he testified he imagined the deed of trust note was to secure his mother in the payment of his hospital and doctors' bills. Later, he testified he owed her $41,000 in all, plus medical expenses.

Mrs. Griffin testified that at about the time she had the deed of trust executed she was told that Eph owed over $400,000. She testified she did not remember whether she learned this before Eph's injury or before or after the deed of trust was executed.

Appellees contend the $25,000 item used in arriving at the $32,500 consideration was fictitious and unreal.

It appears from the record that in 1940 Mrs. Griffin and Eph were engaged in a dispute concerning a $50,000 payment received by Mrs. Griffin. Eph claimed one-half belonged to him. On June 11, 1940, Eph executed a written instrument reading in part as follows:

"2. During 1938, an item of income amounting to $50,000.00 gross was reported as belonging to the partnership then existing between the said Johnie P. Griffin and E. P. Griffin; and the said E. P. Griffin now asserts that such item should have been credited entirely to him and denies that such item was a partnership asset; therefore, know all men by these presents: that I, E. P. Griffin, in consideration of $25,000.-00 cash to me in hand paid by Mrs. Johnie P. Griffin, receipt whereof is hereby acknowledged, do hereby acknowledge full payment of all claims and demands of every kind and character which I now hold against the said Mrs. Johnie P. Griffin, and as a part of this settlement and receipt, I hereby agree: * * *"

Appellant insisted, however, that the $25,000 paid Eph on that occasion was a loan. She and Eph both testified that he later executed a note for the amount and

sent it to her. Mrs. Griffin testified that she could not find the note or a letter written at the same time transmitting the note to her. Bearing in mind the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony, we are of the opinion the trial court's implied finding that the $25,000 paid in 1940 was in settlement of a controversy, and not a loan, is binding on this court. If it was not a loan, then of course it was not a valid consideration for the 1949 deed of trust.

In Brasher v. Jemison, 75 Tex. 139, 12 S.W. 809, 810, the Supreme Court said: "If any portion of the consideration recited in the bill of sale was unreal or fictitious, the transfer would be fraudulent, because the law will not attempt to ascertain what part of the consideration is genuine. There being a part of it unreal and fictitious, the entire conveyance is tainted with the fraud."

And in 20 Tex.Jur., p. 412, sec. 52, is found the statement, "Of course a fictitious debt is no consideration."

The court having found the greater portion of the recited consideration in the deed of trust was fictitious, we overrule the point claiming the cancellation of said instrument was error.

The deed of trust from Eph to Mrs. Griffin covered the identical property covered by the Bank's deed of trust. The excess over the Bank's debt was deposited in the registry of the court. Appellant contends the court erred in adjudging the money to appellees. When the court canceled appellant's deed of trust she no longer had a lien. The appellees were admittedly judgment creditors. It appears that the judgments had been abstracted although evidence of such was not formally introduced during the trial.

It is our conclusion that appellant having no lien, and the appellees being judgment creditors, the court had authority to order the money paid to appellees, even though they did not introduce abstracts of judgments. Neither Eph nor the trustee in bankruptcy has appealed from said judgment.

After the case had been submitted and argued to the court the appellant requested leave to file a trial amendment, requesting among other relief that her indebtedness to Eph be offset against Eph's debts to her. The court did not permit the amendment to be filed. Whether or not to allow a trial amendment to be filed is within the discretion of the trial court. In the state of the record before us we cannot say that the trial court abused his discretion in refusing to allow said trial amendment to be filed.

The appellant alleges error of the trial court in admitting in evidence a number of transfers and conveyances antedating, by a number of years, the two particular instruments under attack, and in admitting testimony concerning such instruments.

It became necessary for appellees to establish upon the trial what was included in the deed from Eph to appellant wherein it is recited "all of my oil, gas and mineral interest in Archer and Wichita Counties, Texas, that is not now covered by an oil and gas lease." Some of the instruments and testimony of which complaint was made were admissible for the purpose of showing what mineral interest Eph owned at the time of the execution of the mineral deed, and to show that the same parties had executed conveyances to each other in the past without any recited considerations. Some of the instruments and some of the testimony adduced concerning same were improperly admitted. The case was tried by the court without a jury, however, and in the absence of a showing that the court considered the inadmissible testimony we must presume that he did not consider such evidence in rendering judgment. There being sufficient legal testimony in the record to sustain the judgment, we overrule the point of error.

It is argued by appellant that the deed of trust and the mineral deed should stand as written because the consideration was not questioned by verified denial.

■ Appellees' suit was based upon the theory of fraudulent conveyances to defeat the rights of creditors. We do not believe that verification was a requisite to such action. 8 Tex.Jur.Ten Year Supp., p. 191, sec. 129, and Colvard v. Goodwin, Tex.Civ.App., 24 S.W.2d 786, lend support to our conclusion.

■ Moreover, appellant did not except to appellees' pleadings for want of verification. We think she waived verification if verification was required.

In Shaw v. Porter, Tex.Civ.App., 190 S.W.2d 396, 398, opinion by Chief Justice McDonald, in discussing the question whether a partnership in that particular case was admitted under Rule 93, T.R.C.P., in the absence of a sworn denial, it was held, "Rule 90 becomes a part of our rules governing appellate practice in providing that a defect, omission or fault in a pleading is deemed to have been waived by a party seeking reversal on such account, unless he specifically pointed out the defect, omission or fault in the pleading to the trial court. It is not unlike the situation where error in a charge is waived by failure to make a timely objection." See also Helms v. Day, Tex.Civ.App., 215 S.W.2d 356.

The point of error is overruled.

■ The appellant contends that she has loaned Eph $88,136.32 that has never been repaid and that she should be allowed to establish her claim against the estate of the bankrupt, Eph Griffin, and the court erred in failing to establish her debt.

Eph testified that he borrowed, in all $41,000, from his mother. This included the $25,000 item impliedly found by the court not to be a loan. He testified that he owed her for hospital and doctors' bills, in an amount unknown to him. Appellant testified to numerous loans and advancements made to Eph. She did not produce any notes or anything in writing to substantiate some of the claimed loans. Some of the advances were made subsequent to the rendition of the judgments for appellees; some were made after Eph voluntarily filed bankruptcy. Some of the advances claimed by her were considered by Eph, according to his testimony, as a gift. Other items concerned expenses of such nature that the court could reasonably find that they were incurred by appellant as her personal expenses in visiting Eph while he was sick, and expenditure of money such as a mother would naturally expend for the comfort of a sick son.

From 1938 to the date of the trial appellant received, through error, monthly royalty payments on a 1/64th interest in the Griffin B lease which in fact belonged to Eph. She testified that by check she paid such money to Eph until he entered the Merchant Marines; then she paid such money by check to Eph's wife until Eph and his wife were divorced; after the divorce she credited the payments to the debt Eph owed her. No records were produced to show what amount she had credited to Eph's indebtedness, neither were checks produced showing the monthly payment to Eph during the fourteen year period, nor how much the payments to her amounted to, though there is evidence that the payments exceeded $500 per month during a portion of the time. She did produce some checks showing payments to Eph's wife prior to the divorce. She testified that in adding the items to make up the indebtedness Eph owed her she did not off-set that amount with any money now held for Eph on account of the above interest, and that she and Eph have never had an accounting of the payments covering the 1/64th interest.

It is not our function to determine whether Eph owed appellant or vice versa. It is our duty to determine whether the evidence supports the trial court's judgment in which he impliedly found that Eph was not indebted to appellant.

While the evidence might have supported a finding that Eph was indebted to appellant, we are not in a position to hold that the evidence as reflected in the record required such a finding.

The appellant has briefed numerous points of error under nine groups. We

have given careful consideration to all points presented and overrule all points whether expressly discussed or not.

Finding no reversible error, we affirm the judgment of the trial court.