**SMALL et al. v. DAILY et al.**
No. 9964.

Court of Civil Appeals of Texas. Galveston.
May 4, 1934.

Rehearing Denied May 24, 1934.

Stevens & Stevens, of Houston, for appellants.

Harry W. Freeman, of Houston, for appellees.

LANE, Justice.

This suit was originally brought by Abe Daily and Joe Daily against Frank Small and Nellie Small, husband and wife, to recover the title and possession of certain 13 acres of land situated in Fort Bend county, Tex., which is fully described in the plaintiffs' petition.

It is made to appear from several amended and supplemental petitions and the answer of the defendants that during the pendency of the suit Frank Small died. On the 18th day of April, 1930, the plaintiffs filed their first amended petition complaining of Nellie Small individually and as surviving wife of Frank Small, deceased, Willie Lee Hall, a feme sole, and J. D. Small, praying, as in their original petition, for the title and possession of the above-mentioned land and for rents and damages.

Defendants answered by a plea of not guilty, general denial, and by specially averring that, at the time of the signing by Frank Small and Nellie Small of the instrument claimed by plaintiffs to be a deed of conveyance, and at the time of filing their answer, the land sued for was the homestead of Frank and Nellie Small. They alleged that the instrument under which plaintiffs claim, though on its face purporting to be a deed of conveyance, was in fact intended as a mortgage given to secure a debt due by Frank Small to plaintiffs. They alleged that they, the signers of the instrument, were ignorant negroes, and that plaintiffs, for the purpose of overreaching them, fraudulently took advantage of them and had them execute the instrument under which the plaintiffs claim; that, as a fact, plaintiffs accepted such instrument as a mortgage and not as a deed of conveyance; that that certain instrument, pleaded by plaintiffs as a link in their asserted chain of title, executed to one J. B. Enos for a recited consideration of $150, purporting to convey to Enos the land, was by all parties thereto agreed to constitute a mortgage; that that certain instrument, pleaded by plaintiffs as a link in their chain of ti-

tle, executed by Frank and Nellie Small to Ed Neuman, was also understood by the parties thereto to constitute a mortgage only, and that said Neuman later reconveyed the land to Frank Small, and later, in lieu of the mortgage, accepted what purported to be a vendor's lien note for $164; that, in the transaction had with J. B. Enos above mentioned, Frank Small executed a note payable to Enos purporting to be a vendor's lien on the 13 acres of land; that in the same way Ed Neuman acquired the Enos note, and that thereafter Frank Small renewed the same; that on the 4th day of October, 1926, the instrument signed by Frank and Nellie Small purporting to be a deed conveying the land to plaintiffs was executed under the following circumstances: "That the plaintiff Abe Daily represented to the said Frank and Nellie Small that if they would make the plaintiffs a deed to said property that they, the plaintiffs, would carry the same as a mortgage in the same way that the previous deeds above referred to, to Enos and Neuman, and the plaintiffs were carried, that the said Frank and Nellie Small understood that the said instrument executed by them on the 4th day of October, 1926, was to secure the said indebtedness covered by the said Enos and Neuman notes and their debt to the plaintiffs aggregating $845.00. That the plaintiffs so understood said instrument and accepted it as such mortgage."

They alleged further that, at the time Frank and Nellie Small signed and acknowledged the instrument under which plaintiffs claim, the plaintiff Abe Daily was present, and, before they signed the instrument, he represented to the signers that they could pay what they owed plaintiffs out of crops grown on the premises; that, in pursuance of such understanding, Frank Small paid plaintiffs $700 on said debt. They alleged that, on the day the instrument was signed by Frank and Nellie Small, the plaintiffs, through Abe Daily, got Frank and Nellie Small to execute and deliver to plaintiffs another instrument, which recites that Frank and Nellie Small had that day conveyed the land to plaintiffs for a consideration of $845, the amount of the original debt due to the plaintiffs by the Smalls, and which also recited that such instrument was not security for a debt, and that Frank Small was renting the land from plaintiffs for a part of the crops raised on the premises; that at the time the instrument last mentioned was executed Abe Daily fraudulently represented to Frank and Nellie Small that such instrument was to allow them an opportunity to pay the debt due plaintiffs out of crops raised by them.

Defendants alleged further that, if Frank and Nellie Small executed the purported deed to the plaintiffs, they did not understand the import of it, and that at no time did they intend to convey the land to plaintiffs; that said instrument was never explained to either of the signers thereof, and particularly to Nellie Small by the notary who purported to take her acknowledgment. Defendants alleged further as follows: "That at the time of the execution of said instrument hereinbefore referred to, and under which the plaintiffs claim, the plaintiffs stated to and represented to the defendant Nellie Small and her deceased husband, that they could pay the debt due the plaintiffs out of the crops, and after the said debts were paid out of said crops, that the property would become clear and free from any debt or claim of the plaintiffs; and that, relying upon these representations, the defendant, Nellie Small, signed the instrument under which the plaintiffs claim title to the premises in controversy. That she would not have signed the same had it not been for the said representations of the plaintiffs. That she was never willing to sell her homestead and did not understand that the instrument which she signed was intended as a clear deed to the property."

By supplemental petition plaintiffs denied generally the allegations of the defendants' answer. They specially denied that the instrument under which they claim was intended as a mortgage; they deny that they, or either of them, were or was present at the time the instrument was signed and acknowledged by Frank and Nellie Small.

### Facts.

The deed signed by Frank and Nellie Small and delivered to plaintiffs recites that for a consideration of $845 paid to them by Abe Daily they were conveying to Joe and Abe Daily the 13 acres of land. Such deed bore the certificate of E. M. Mayfield, a notary public in and for Fort Bend county, Tex. Such certificate was in due and legal form in every particular and was signed and sealed by the notary. Such deed is dated October 4, 1926.

On the same day, October 4, 1926, Frank Small and Nellie Small executed and delivered to Abe and Joe Daily an instrument reading as follows:

"Whereas, we, Frank Small and Nellie Small, husband and wife, have heretofore executed and delivered one or more instruments

relating to all or part of the 13 acres of land in the Randolph Foster League in Fort Bend County, Texas, and being the tract of land which was heretofore conveyed to Frank Small by Mattie Paley as administratrix in partition of the Ben Small Estate, which instruments although in the form of deeds were understood by us to be security for a debt and not an absolute conveyance of the land;

"Whereas, we have on this day executed and delivered our deed to Abe and Joe Daily conveying the said tract of land in consideration of the sum of Eight Hundred Forty Five ($845.00) Dollars, which is to be paid by the said Dailys as follows:

"The cancellation of our debts to Ed Neuman and to the said Abe and Joe Daily and the residue, if any, of said consideration to be paid to us but if said consideration is not sufficient to pay all of said indebtedness, then we are to pay the balance. Each of us fully understands that this transaction is a conveyance of said land and is not merely a security for any debt and each of us fully understands that we have no further interest, claim or right of any character in and to said land, and that same belongs to the said Abe and Joe Daily absolutely free of any claim, demand or right in us or either of us.

"We desire to rent the land from the said Joe and Abe Daily for the crop year 1927 ending December 1st, 1927, and we do hereby acknowledge ourselves to be the tenants of the said Joe and Abe Daily for said period of time and as rent for said land we promise to pay to the said Dailys at Simonton, Texas, as gathered ⅓ of the corn and ¼ of the cotton and do agree to farm said land for said year 1927 in a farmer like manner and to gather and harvest the said crops as aforesaid. At the expiration of said lease we do hereby agree to give possession of said land to the said Joe and Abe Daily, their heirs and assigns. Each of us do hereby further state that neither the said Joe nor the said Abe Daily nor any other person acting for them have made to us any promise or promises which are not written out in this instrument.

"Witness our hands in duplicate originals one copy of which is delivered to us and the other copy to the said Daily on this 4th day of October, 1926.
"[Signed] Frank Small
"Nellie Small."

Abe Daily, one of the plaintiffs, testified that in 1926 Frank and Nellie Small told him that they owed Mr. Neuman and that he was threatening them and that they wanted him (Daily) to take up Mr. Neuman's debt; that he told them that, before he could do anything like that, he would have to consult his attorney about the matter; that he went to Richmond and laid the matter before Judge Peareson, and later he came back and saw Small and wife and told them that Judge Peareson had told him that he could only advance the money upon an outright sale of the land by them to him; by the execution of a deed of conveyance of the land to him, not a mortgage; that, after he had told Frank and Nellie Small what Judge Peareson had advised him, he and they went to Judge Peareson's office, and Judge Peareson explained to them that, if they wanted Daily to advance them money on the land, he could only do so safely upon a sale by them of the land to Daily by a "straight out bona fide deed"; that, upon such advice by Judge Peareson, he and they told Peareson to prepare the necessary papers, and in the meantime to get in touch with Neuman and find out how much his claim was; that Judge Peareson prepared the deed under which plaintiffs claim and the other instrument of date October 4, 1926, under the direction of Frank and Nellie Small and himself, and explained such papers to all of them; that Frank Small and Nellie Small took the two instruments into the office of E. M. Mayfield, and in a short while the Smalls came to Judge Peareson's office and handed him the two instruments; that he was not in Mayfield's office while the Smalls were there; that he at no time before the two instruments were executed and delivered, nor afterward, told Frank Small or Nellie Small that either of the said papers were to be signed as mortgages; and that all he wanted was his money back.

Witness Dozier testified that in the fall of 1926 Frank Small told him that he had sold Mr. Daily his land.

Judge D. R. Peareson testified that he recalled having drawn a deed to be executed by Frank and Nellie Small some time in 1926, and had a distinct recollection of what took place at that time in his office; that in the presence of Frank and Nellie Small he advised Mr. Daily that it would not be safe for him to take any character of lien on the Small land and advance any money thereon, and that the only way he could safely advance any money on the land was to make an outright purchase of the same; that he so stated to Frank and Nellie Small at that time; that he told them that Mr. Daily was not going to advance them any money on a lien on the land, and that the only way he would handle the matter was to make an out-

right purchase of the land; that the parties furnished him the data by which to prepare a deed by which Frank and Nellie Small were to execute the conveyance of the land to Abe and Joe Daily; that he was instructed by the parties to prepare such deed, and that he did so; that, after he had prepared the papers, he took them into Mr. Mayfield's office to be acknowledged by Frank and Nellie Small, and that in a short while they came into his office and turned the deed over to him; that he knows that Abe Daily was not present in Mayfield's office when the deed was acknowledged; that he told Frank and Nellie Small that the paper that he had prepared was a deed, an outright sale of the property; that it was not any lien; that Mr. Daily would not handle it on the basis of a lien; that he would do so on the basis of a purchase of the property only.

Mr. E. M. Mayfield, the notary who took the acknowledgments of Frank and Nellie Small to the deed in question, testified that he read the deed to Frank and Nellie Small and that when he got through reading it to them he asked them if they understood it, and they stated that they did; that he then took Frank's acknowledgment and he went out of the office, and he then took Nellie Small's acknowledgment; that in taking the woman's acknowledgment he explained it to her, and that she stated that she understood it; that she had willingly signed the same for the purposes and considerations expressed therein; and that she did not wish to retract it.

Wiley McCauley testified that about two years prior to giving his testimony he offered Mr. Daily $65 per acre for the 13 acres of land in question, and that Mr. Daily told him that he could not sell it, as he did not have the papers fixed up.

Defendant Nellie Small testified that she was the widow of Frank Small, deceased about three years; that she and Frank had lived on the land in question for 27 years and made it their homestead. Being asked about the deed purporting to be executed by her and her husband, she said she could not read and could only sign her name; that she signed the deed in question; that the signature "Nellie Small" appearing thereon was her signature; that she had never talked to Mr. Daily about the deed before the time she signed it, and at that time asked if she was signing the paper in order for him to take the land from her, and that he told her "No," that he did not want land, he just wanted his money, and that as long as she tried to pay him he did not want the land; that she asked

Mr. Daily if he was having her sign the paper to take her land, and that he told her "No," he just wanted security for his money. Being asked if anybody explained the deed to her or told her what it was, she said: "They were reading; but I didn't know nothing about what he was reading; I knew he was reading something that Mr. Daily had fixed up for him, at the time he was reading that to my husband you know, and he understood it but I didn't"; that Mr. Mayfield did not tell her that she was signing a deed to Mr. Daily conveying her property to him; that, if he did, she did not hear him; that he explained the deed to her, but she did not know anything about it; that at the time she acknowledged the deed her husband was in the room. She stated that a man read the deed, but that she did not know who he was; that no one told her that she was selling her home, and Mr. Daily told her that he did not want it; that nobody explained the paper to her; that Mr. Mayfield read the deed to her husband in her presence and hearing, but she did not understand it.

We think the evidence stated is substantially all the evidence pertinent to the issue or issues presented by this appeal.

The cause was tried before a jury. The court in his charge defined the words "deed," "mortgage," and "preponderance of evidence" as follows:

"A deed is a written instrument which conveys the fee simple title to land for a recited consideration from the grantor to the grantee.

"A mortgage is a written instrument given by one person to another to secure the payment of money.

"You are instructed that the term 'preponderance of the evidence' as used in this charge, means the greater weight of the credible evidence offered and submitted to you under the rulings of the Court."

He followed such definitions with the following instructions: "An instrument purporting on its face to be a deed can be shown to be in fact only a mortgage by proof showing that it was the purpose, understanding and intention of the person executing the deed and the person to whom such deed was made at the time of the execution of same that it was not their intention to convey the fee simple title but to convey said title to the grantee in such instrument for the purpose of securing a debt."

The court then submitted to the jury but one special issue, as follows:

"Do you find from a preponderance of the

evidence that the instrument dated October 4, 1926, by Frank and Nellie Small, as grantors, to Joe Daily and Abe Daily as grantees, purporting on its face to be a deed, was understood and agreed at the time by the said grantors and grantees to be a mortgage?

"You will answer 'yes' or 'no' as you find the facts to be from the evidence."

The jury answered the special issue submitted in the negative.

Upon the verdict of the jury and the evidence, the court rendered judgment awarding the title and possession of the land sued for to Abe Daily and Joe Daily. All the defendants have appealed.

Appellants' contentions for a reversal of the judgment are:

First, that the court erred in giving to the jury the definition of "preponderance of the evidence" found in the charge of the court.

Second, that the court erred in refusing to submit to the jury appellants' requested issue, which reads as follows: "Did E. M. Mayfield, the notary public, fully explain to Nellie Small the nature of the instrument which she signed in the absence of Frank Small?"

Third, that the court erred in admitting in evidence, over the appellants' objection, a transfer of a purported vendor's lien by W. D. Mills et al., as independent executors of the estate of J. B. Enos, deceased, to Ed Neuman, in that it was not shown that transferees were such executors.

■ We overrule the first contention without discussion of the same further than to say that there was no error in the giving of the charge complained of.

■ The requested charge, the refusal of which is complained of, is a request to have the jury find whether or not the notary who took the acknowledgment of Nellie Small fully explained to her the nature of the instrument signed by her, in the absence of her husband. The certificate of the notary on its face was in every respect in statutory form. It is apparent from the request that a finding from the jury as to whether or not the facts recited in the certificate of the notary were true was requested, and it is apparent therefrom that it contained no request as to whether any fraud or imposition was practiced on Nellie Small which induced her to sign and acknowledge the deed. The rule is well settled in this state that the certificate of the officer taking an acknowledgment of a married woman is conclusive of the facts therein set forth, unless fraud or imposition is alleged and shown. Hartley v. Fosh, 6 Tex.

208, 55 Am. Dec. 772; Brand v. Colorado Salt Co., 30 Tex. Civ. App. 458, 70 S. W. 578; Oar v. Davis, 105 Tex. 479, 151 S. W. 794; Essex v. Mitchell (Tex. Civ. App.) 183 S. W. 399, 402, and other authorities cited in Cox v. Sinclair Gulf Oil Co. (Tex. Civ. App.) 265 S. W. 196.

By article 3723, Revised Civil Statutes of 1925, it is provided as follows: "All declarations and protests made and acknowledgments taken by notaries public, and certified copies of their records * * * shall be received as evidence of the facts therein stated in any court of this State."

In 1 Texas Jurisprudence, § 184, p. 584, it is said that a certificate of a notary taking the acknowledgment of a party is conclusive, unless impeached in a manner recognized by law.

In the case as indicated below it was held:

A certificate of acknowledgment is prima facie evidence of the facts therein recited. Ellington v. Bryant (Tex. Civ. App.) 293 S. W. 327.

Where a married woman appears before a notary to acknowledge an instrument, the recitals of the notary's certificate are conclusive, unless fraud or imposition is shown. Ward v. Weaver (Tex. Com. App.) 34 S.W.(2d) 1093; Hill v. McIntyre Drilling Co. (Tex. Civ. App.) 59 S.W.(2d) 193.

■ The question as to whether any fraud or imposition was practiced upon Nellie Small which induced her to sign and acknowledge the deed was, under the evidence, a controverted issue, and upon that issue Nellie Small, as grantor, had the burden to prove the existence of such fraud or imposition. Such issue being a controverted one under the evidence, if appellant Nellie Small, or any one of appellants, desired a submission of such issue to the jury, it was their duty to request such submission. No such issue was submitted, unless it was comprehended in the court's charge. There being no request for the submission of such issue and no such submission made, it must be presumed that the court, in support of the judgment, found that no such fraud or imposition existed; there being an abundance of evidence to support such a finding.

In Hightower v. Stafford (Tex. Civ. App.) 61 S.W.(2d) 857, as in many other cases, it is held that the burden is upon a grantor to prove the certificate of acknowledgment to a deed signed by him or her is false, or that his or her acknowledgment was procured by means of fraud or imposition.

■ Appellants' third contention presents no

reversible error. By their deed Frank and Nellie Small conveyed all such right, title, and interest they owned in the land, and therefore the effort of appellees to prove, by the introduction in evidence the conveyances objected to, that they held vendor's liens against the land, was harmless, as whatever title Small and wife owned, whether a good title or not, passed to appellees by the deed of Small and wife, conceding that appellees held no vendor's lien against the land.

On the 19th day of April, 1934, this court entered an order reversing the judgment of the trial court and remanding the cause. After a careful review of the record and the evidence, we have reached the conclusion that we erred in making such order. Having reached such conclusion, the order so entered is set aside, and, for the reasons above stated, the judgment is here and now affirmed.

Affirmed.