Bera Lewis FOX et vir et al., Appellants,

v.

H. O. LEWIS et al., Appellees.

No. 10812.

Court of Civil Appeals of Texas.

Austin.

March 1, 1961.

Rehearing Denied March 29, 1961.

H. T. McBrayer, Julius F. Franki, Austin, for appellant.

Hammond & Hammond, Burnet, for appellee.

HUGHES, Justice.

Appellants Bera Lewis Fox and husband L. C. Fox, Ruby Lewis Bolm and husband H. S. Bolm sued appellees H. O. Lewis and Cecil C. Lewis, the brothers of Mrs. Fox and Mrs. Bolm, to cancel an instrument dated February 9, 1953, purportedly executed by the father and mother, F. P. Lewis and wife, Florence M. Lewis, to their sons A. T. Lewis and H. O. Lewis, and under which instrument appellees claim full title to the approximately 450 acres of land in Burnet County involved in this suit. Upon obtaining such relief, appellants also sought partition of the property between themselves and appellees in accordance with their respective interests therein.

The cause was tried to a jury which made these findings:

1. Mrs. Florence M. Lewis was not of unsound mind on February 9 and 10, 1953, when the deed sought to be cancelled was signed and acknowledged.

2. That on the same dates F. P. Lewis intended that such deed should be delivered to H. O. Lewis and A. T. Lewis, or either of them, for the purpose of vesting title to the lands therein described in accordance with the terms of such deed.

3. That on February 9 and 10, 1953, when the deed was signed and acknowledged, Mrs. Florence M. Lewis did *not* intend that such deed should be delivered to either H. O. or A. T. Lewis for the purpose of vesting title to the described lands in them according to the terms of the deed.

4. That after February 10, 1953, and before the death of Mrs. Florence M. Lewis, F. P. Lewis gave such deed to A. T. Lewis with the intention of relinquishing control over it, and with the purpose that it should become effective according to its terms.

5. That the delivery of such deed, as found in 4 above, was authorized either expressly or impliedly by Mrs. Florence M. Lewis.

6. We set out this issue and answer in full:

"Do you find from a preponderance of the evidence that the deed in question dated February 9th, 1953, was never delivered by F. P. Lewis and Mrs. Florence M. Lewis (or by either of them acting with authority, express or implied, of the other), to H. O. Lewis and A. T. Lewis, or either of them?

"Answer 'Yes' or 'No'.

"We, the Jury, answer: No."

7. That F. P. Lewis was not caused to execute such deed by the exercise of undue influence on him by A. T. and H. O. Lewis, or either of them.

8. Similarly, it was found that undue influence was not practiced upon Mrs. Florence M. Lewis.

9. That A. T. and H. O. Lewis, in good faith, intended to perform their obligation, contained in the deed of February 9, 1953, to take care of their father and mother during their lives.

10. That A. T. Lewis and H. O. Lewis did not fail to substantially perform the obligation to care for their parents during their lives.

Based on this verdict, judgment was rendered that appellants take nothing by their suit.

This is the second trial of this case. The first trial resulted in a mistrial because the jury failed to answer all issues submitted to it.

Appellants' first point is that the Trial Court erred in declaring a mistrial of the first trial because the verdict of the jury in that trial, although incomplete, was sufficient to sustain a judgment in their behalf.

The merits of this point are briefed at length by the parties, but neither affirms nor denies our right or duty to consider this point.

We have concluded that we have no right, and hence no duty, to determine on this appeal the validity of the order declaring a mistrial on the first trial.

█ The order declaring a mistrial is an interlocutory order and not appealable. W. T. Rawleigh Co. v. Sims, Tex.Civ.App., Amarillo, 108 S.W.2d 332, no writ history.

█ The rendition and entry of judgment upon a sufficient jury verdict is a ministerial act and this Court, under the authority of Art. 1824, Vernon's Ann.Civ. St., may, by mandamus, compel a trial judge to render judgment under such circumstances. McGregor v. Allen, Tex.Civ. App., Amarillo, 195 S.W.2d 945, writ dismissed.

█ It is our opinion that the remedy afforded by Art. 1824, in these circumstances, is exclusive.

If we were now to hold that judgment should have been rendered on the jury verdict in the first trial, then this cause would have to be reversed in order that a motion for new trial could be filed and determined as to the first trial, and it is conceivable that this second trial would be all wasted effort. This would be an imposition upon the Trial Court which should not be permitted.

By failing to invoke a plain and adequate remedy for testing the sufficiency of the jury verdict on the first trial, we hold that such question cannot now be raised.

While the question is not precisely the same, there is a similarity between reviewing the Court's action in granting a new trial and a mistrial in a subsequent trial. The "new trial" problem was discussed at length by this Court in Ebaugh v. State, 342 S.W.2d 221, and it was held that no such review could be made.

█ If we entertained and sustained the point presented we would, in effect, be granting a writ of mandamus. While this writ is a legal writ its issuance is controlled by equitable principles, and will not be granted in aid of one who is guilty of laches. Callahan v. Giles, 137 Tex. 571, 155 S.W.2d 793. Clearly appellants are guilty of laches. They have not yet specifically sought the relief to which they claim they are entitled. In the meantime, they have consumed the time of the courts and have watched the position of the parties change. This is laches.

■ Appellants' second and third points are jointly briefed. A special issue was requested and refused inquiring if the instrument of February 9, 1953, was signed by Florence M. Lewis voluntarily and of her own free will by placing her mark thereon as her signature. Appellants assert that this was a material fact issue and that the Court erred in not submitting this issue and in assuming the contrary in his charge.

Appellants pleaded these facts [1] and conceding that there is some evidence to make them issuable, we are of the opinion that they do not present a controlling issue which should have been submitted to the jury.

A favorable answer to this issue would not have benefited appellants for the reason that Florence M. Lewis by duly acknowledging the execution of the instrument as authorized by law ratified and adopted as her signature mark the signature mark on the instrument even though it may have originally been a forgery. Stout v. Oliveira, Tex.Civ.App., El Paso, 153 S.W.2d 590, writ dism., w. o. m.

The instrument in suit was purportedly signed on February 9, 1953 and acknowledged on February 10, 1953. The acknowledgment is in proper form, and there is no attack made on such acknowledgment by pleading.

It is suggested that there is some evidence to the effect that Florence M. Lewis did not appear before the Notary whose certificate of acknowledgment appears on the instrument for the purpose of acknowledging it. It is not contended that the evidence conclusively established this nonappearance as a fact.

■ It is our opinion that the failure to plead invalidity of the notarial certificate prevents our consideration of a factual issue regarding it. See Matthews v. General Accident Fire & Life Assurance Corp., Ltd., 343 S.W.2d 251, Supreme Court of Texas, decided January 25, 1961.

■ If a fact issue was made by the evidence regarding the appearance of Florence M. Lewis before the Notary, this issue was waived by failure to plead it. See Small v. Daily, Tex.Civ.App., Galveston, 72 S.W. 2d 663, writ dism.

■ That the Court in its charge may have assumed that Florence M. Lewis signed the instrument in suit, was an assumption of an immaterial fact, and in our opinion, if error, was harmless error under Rule 434, Texas Rules of Civil Procedure.

■ Appellants' fourth point is that the Court erred in failing to submit the following requested special issue:

"Do you find from a preponderance of the evidence that F. P. Lewis and wife, Florence M. Lewis, never intended for the written instrument in question, dated February 9, 1953, to become operative as a conveyance until after the death of the survivor of them?"

Accompanying this issue was the following definition of conveyance:

"By the term 'conveyance' as used in this charge is meant the act or instrument by which property in real estate is transferred from one or more persons to one or more persons, and whether the estate granted, if any, in such real estate be one of present or future enjoyment."

Appellants' fifth point, briefed with point four, is that the Court erred in assuming in its charge, over proper objections, that the instrument in suit was a deed, for the reason that there was evidence from which such instrument could have been held testamentary in nature.

1. Appellants also pleaded that F. P. and Florence M. Lewis did not intend such instrument to be a present conveyance of their property "* * * at the time *they signed* the same * * *"

The Court, in its charge, defined "conveyance" as follows:

"By the term 'conveyance,' wherever used in this charge, is meant a written instrument whereby the grantor or grantors named therein transfer to the grantee or grantees named therein some right, title or interest in real estate or real property."

The jury made findings, previously stated, that the "deed" in suit was made for the purpose of vesting title to the land described in it in H. O. and A. T. Lewis, "according to the terms of the deed."

We do not find that the Court used the word "conveyance," after having defined it, in any of the issues. The word used in them was "deed."

We think it obvious that by the word "deed," the Court, in its charge, meant to attribute to it the definition of "conveyance," and we believe that the jury must have so considered it.

It is our opinion that the definition of the word "conveyance," by appellants because it included "future enjoyment," was more favorable to appellees than the definition of it contained in the charge. From the Court's definition, the jury may have thought that present enjoyment was essential in a conveyance.

The instrument in question was executed on the printed form of a "Warranty Deed." It contains all of the usual clauses found in such deed. The only unusual features in it are these: After reciting a cash consideration of $5.00, a contractual consideration is incorporated in these words:

"   *   *   *   and in further consideration that the said A. T. Lewis and H. O. Lewis, our sons, promise agree and bind themselves to take care of us and each of us during the remainder of our natural lives, providing us with food, clothing, medicine and all other necessities of a comfortable living, caring for and nursing us as our condition may

demand, so long as either of us shall live, and after the death of the survivor of us the title to the property herein conveyed shall, if above covenants and stipulations be faithfully kept and performed, pass to our said sons, A. T. Lewis and H. O. Lewis, in equal portions, unconditionally and without any restrictions whatsoever."

Just above the signature of the grantors there appears the following language:

"All subject to an easement in favor of the Lower Colorado River Authority. Failure on the part of the grantees herein to faithfully comply with and carry out the obligations, agreements and considerations in this deed above stipulated, shall render this deed null and void, and in such event the lands herein conveyed shall revert to these Grantors. This deed is subject to a deed and easement for 'Farm to Market' road and also to Deed to Henry Thomas Lodge, given by F. P. Lewis & wife."

It is the duty of the Court to ascertain the intention of the parties to a written instrument without aid from evidence as to attending circumstances when the writing plainly and clearly discloses such intention, or is phrased in language not fairly susceptible of more than one interpretation. Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W. 2d 800, 127 A.L.R. 1217.

It is our opinion that the instrument to be construed is subject to no other reasonable construction than that it was a conveyance of an estate in praesenti as distinguished from a will which is inoperative and revocable (generally) before the death of the maker.

The only difficulty encountered in construing this instrument is the language appearing in the paragraph providing for consideration wherein it is stated that "after the death of the survivor of us the title to the property herein conveyed shall *   *   *   pass   *   *   *"

We believe that when this language, which alone gives rise to the contention that the instrument is testamentary, is considered with the other clauses commonly found in deeds and particularly with the special clause inserted just above the signatures of grantors, previously copied, providing that grantees' failure to perform their contractual obligation assumed by them in the instrument "shall render this deed null and void, and in such event the lands herein conveyed shall revert to these grantors," the conclusion is inescapable that a present but defeasible fee simple title to the lands described was conveyed by it.

There are many rules of construction which lead to this result, most of which are referred to in an excellent opinion by Associate Justice Fanning for the Texarkana Court of Civil Appeals in Hedick v. Lone Star Steel Company, 277 S.W.2d 925, writ ref., N.R.E. See also Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617.

■ We have particularly applied the rules here, there stated, that we harmonize seemingly inconsistent, but not irreconcilable, parts of an instrument, and that we will, if it can be reasonably and fairly done, construe an instrument so as to make it valid and operative rather than to make it a nullity.

If the instrument in suit is testamentary in character, it is a nullity.

The first quoted paragraph of this instrument plainly recites the conveyance of the lands described, but it is made clear that such conveyance was upon condition, and that indefeasible title would not pass until such condition was fully discharged.

This interpretation is, in our opinion, the only reasonable one which can be made from an examination of the instrument as a whole.

This construction is affirmed by and entirely consistent with the last quoted paragraph of the instrument wherein it is made evident beyond doubt that the property was conveyed upon condition that it would re-vert if the promises previously exacted were not fulfilled.

Since we hold, as a matter of law, that the instrument in suit is a deed, conveying fee simple title to the lands therein described upon condition subsequent, it follows that no error was committed by the Trial Court in refusing to submit to the jury the requested issue pertaining to its intent and construction. Nor was there error in assuming in the charge that the instrument was a deed.

■ Appellants' sixth point is that the Court erred in admitting in evidence, over their objection, testimony of various witnesses pertaining to the mental capacity of Florence M. Lewis similar to and reflected by the following questions and answers:

"Q. Mrs. Frank, I'll ask you, from your observation of Mrs. Lewis on those occasions, and on all other occasions that you might have seen her, and visited with her, whether or not, in your opinion, in February of 1953, Mrs. Lewis could understand the nature and extent of her property and the effect of the disposition thereof.

"A. Well, I don't know why she wouldn't be able to; and it is my opinion that she was.

"Q. Mr. Jackson, from your observation of Mrs. Lewis on the occasions that you visited with her, especially since 1951, that you saw her, state whether or not in your opinion Mrs. Lewis had the mental capacity to understand the nature and extent of her property and the disposition thereof in the month of February, 1953."

Although objection to this question was overruled, the question was reframed so as to ask if in the opinion of the witness, "Mrs. Lewis had the mental capacity to understand the nature and extent and the disposition thereof in making a deed or will." The witness answered: "I think so."

In Beckham v. Mayes, Tex.Civ.App., Fort Worth, 229 S.W.2d 636, 638, no writ history, many witnesses had testified that the subject person did not have mental capacity to know and understand the nature and extent of his property and the object of his bounty where involved in a business transaction. While this evidence seems to have been admitted without objection, the Court in regard to it stated:

"It is no longer debatable that laymen may, after stating their observations, knowledge of habits, conduct, expressions, peculiarities and disposition of another person, testify, giving their opinions as to whether such person was mentally capable of understanding the nature and effect of his acts as relating to his property. 24 Tex.Jur. 416, et seq.; 44 Tex.Jur. 583, sec. 41; 9 Tex. Jur. 10 year supp., 736–7, sec. 41; Chambers v. Winn, 137 Tex. 444, 154 S.W.2d 454."

That the matter is no longer debatable may be debatable, but not, we think, the statement of law. In the case of Chambers v. Winn, referred to by the Court, it was stated, citing from an earlier case, that a qualified witness might give his opinion "as to whether he (testator) was mentally capable of knowing or understanding the nature and effect of his acts, etc., as distinguished from his opinion as to whether the testator possessed the degree of intelligence to do what he did do." [137 Tex. 444, 154 S.W.2d 455]

In Welch v. Shoubrouek, Tex.Civ.App., Beaumont, 260 S.W.2d 84, 87, no writ history, it was held:

"On another trial, with the proper wording of the special issue regarding testamentary capacity and proper instructions thereunder, the physician as a witness should be permitted to testify whether in his opinion the testator at the time he executed his will, had sufficient mental ability to understand the business in which he was engaged, the effect of his act in making the will, the nature and extent of his property, to know his next of kin and the natural objects of his bounty and their claims upon him, to have memory sufficient to collect in his mind the elements of the business in which he was engaged and to hold them long enough to perceive at least their obvious relation to each other and to be able to form a reasonable judgment as to them."

In Wilkinson v. Wilkinson, Tex.Civ.App., Beaumont, 322 S.W.2d 662, 665, writ dism., among the questions asked a witness in a will contest were these:

"Q. Do you think that she would at that time have had sufficient mental ability to understand the business in which she might have been engaged in making a will and understand what she was doing? A. I think so.

"Q. Do you think she would have at that time been able to understand the effects of her act in making a will? A. Yes, sir."

The Court held these to be proper questions, citing Welch v. Shoubrouek, supra; Adamson v. Burgle, Tex.Civ.App., San Antonio, 186 S.W.2d 388, writ ref., w. o. m.; and referred to McCormick and Ray, Texas Law of Evidence, Vol. 2, Sec. 1421; 7 Baylor Law Review 121; 23 Texas Law Review 120, and we desire to add 8 Texas Law Review, 589.

In Adamson v. Burgle, a scholarly opinion written by now Supreme Court Associate Justice Norvell, it was held that the following questions to Dr. Johnson did not call for a legal conclusion, and hence the answers were admissible [186 S.W.2d 396]:

"Q. I will ask you whether or not, based upon these matters that you have related, whether on the tenth of August, 1930, she (Mrs. Bates) would have been able to know anything intelligently about any business transactions that she might have had? A. She would not have been able to.

"Q. Would she have been able at that time to make an estimate of the type and character and the amount of her estate and those who would naturally be entitled to her bounty? A. She would not have been able to.

"Q. Now, Doctor, I will read this first one. (Counsel then read the will.) Now, Doctor, based upon your observations that we have gone over several times and your knowledge of the type of insanity with which Mrs. Bates was afflicted, I will ask you if it would have been physically possible for her, on the tenth day of August, 1930, to have written this document of her own volition? A. Physically, I wouldn't know what her condition was, except as she expresses it in there in the will, that she was emaciated. Mentally, she couldn't have done that."

In addition to the authorities cited or discussed in Adamson v. Burgle, we refer to Federal Underwriters Exchange v. Cost, Tex.Com.App., 132 Tex. 299, 123 S.W.2d 332, by Judge Smedley, where this question and the leading authorities pertaining to it are the subject of an enlightening discussion.

It is our opinion, considering all the authorities cited to and read by us, that the questions propounded fall within the domain of factual inquiries as distinguished from legal conclusions and that there was no error in admitting the answers to them.

■ It is a question of fact as to whether or not a person knows or understands the nature and consequences of his act in writing a contract, or in executing a deed or will. The quantum of intelligence or mental capacity required to make a valid contract or execute a valid deed or will is a question of law.

It is our opinion that the questions here were of the former variety.

■ In appellants' seventh point, complaint is made of the following jury argu-

ment made by one of attorneys for appellees:

"There's only one person on God's green earth that could have told you about that indebtedness, and could have told you whether or not it was settled, and that was Owen Lewis. And you say, 'Well, why didn't Owen get up there on the witness stand and tell us about it?' The law would not permit him to do it. Paragraph 10-B. Now, if Mr. Franki would have—if he had wanted to have known about it enough, he could have called Mr. Owen Lewis up on the witness stand, but he didn't provide us with that information. He didn't provide us with the testimony from Mr. Owen Lewis at all. The Almighty has sealed the lips of Mrs. Florence Lewis, who likewise, could have told you, and the law has sealed the lips of Owen Lewis."

Rule 182a, T.R.C.P., provides:

"Court Shall Instruct Jury Effect of Article 3716.

"Subject to appellate review for an abuse of discretion, the trial court shall in a proper case, where Article 3716 prohibits an interested party or witness from testifying, instruct the jury that such person is not permitted by the law to give evidence relating to any transaction or conversation with, or statement by, a deceased person, unless he is called to testify thereto by the opposite party."

The Court, without objection, charged the jury in conformity with this rule as follows:

"(a) Our law provides that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the

opposite party; and these provisions extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent.

"(b) Therefore, in this case, neither the plaintiffs Bera Lewis Fox and husband, L. C. Fox, and Ruby Bolm and husband, H. S. Bolm, or the defendants H. O. Lewis and Cecil C. Lewis, are permitted by law to give evidence relating to any transaction or conversation with, or statement by, F. P. Lewis, Mrs. Florence M. Lewis or A. T. Lewis, all now deceased, or either of them, unless such party should be called to testify to such matters by the opposite party or parties."

H. O. Lewis is the same person as Owen Lewis.

The argument complained of was not objected to when made.

The purpose in adopting Rule 182a is the subject of comment by the Author in Franki's Vernon's Annotated Texas Rules, Civil, found under the Rule, to which we refer. The Author there states that under prior practice the jury could only speculate as to why certain parties and witnesses had not testified and might reach improper conclusions from their lack of knowledge. To "minimize these undesirable effects of" Art. 3716, V.A.C.S., he says, Rule 182a was adopted.

We believe that the rule was adopted to bring about a change; for if no change was wrought by it, there is no meaning to the rule. We accordingly, no longer feel bound here by decisions such as Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291 and Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 270 S.W. 1001, cited by appellants.

No abuse being charged or shown, it is our opinion that the Court's charge was in consonance with the rule and that counsel's argument was within the legitimate scope of both. No longer will the jury be in the dark as to why certain and obviously informed witnesses do not testify and whose responsibility it is that their testimony is not heard.

The Court here properly charged the jury in this respect, and counsel had the privilege, if not the duty, of commenting fairly upon it in his argument to the jury. There was no error in his so doing.

■ Appellants' eighth point is that in view of the jury finding, 3 supra, that Florence M. Lewis when she signed and acknowledged the deed did not intend for it to be delivered for the purpose of vesting title to the land in the grantees in accordance with the terms of the deed coupled with the fact that 25 acres was the separate property of Florence M. Lewis and the balance occupied by herself and husband as their home, and their assertion that there was no evidence to support the jury findings, 4 and 5 supra, to the effect that Florence M. Lewis, before her death, authorized the effective delivery of such deed, that the Court erred in denying this motion for judgment upon or notwithstanding the verdict.

The issue in jury finding 6, supra, directly negatives the nondelivery of the deed by the Lewises with authority, express or implied, of the other.

Mrs. Leona Lewis, widow of A. T. Lewis, a witness for appellants, testified that within a day or two after the deed was signed, February 9, 1953, Mr. F. P. Lewis, one of the grantors, brought the deed, it having been executed elsewhere, to the house where she and her husband and F. P. Lewis resided. We quote her testimony:

"Q. Now, I'll ask you whether or not within a day or two after that deed was signed down there at Owen's house, whether or not it was brought to the house where you and Theron and Mr. Lewis were living? A. Yes, it was, the next day or two. I couldn't state just what time—

"Q. Do you know who brought the deed there? A. Mr. Lewis did.

"Q. Who was with him when he brought it there. A. Well, Theron, I suppose. If I—I think so, Theron.

"Q. You think it was Theron? A. I think so.

"Q. Did Mr. Lewis bring the deed into the house? A. Yes, he had it in his pocket.

"Q. All right. What, if anything, did Mr. Frank Lewis say when he brought the deed into the house on that occasion? A. Well, he handed it to Theron and he said, 'All right, here's the deed, and over there is the abstract, in the corner.'

"Q. All right. And what did your husband, Mr. Theron Lewis, do with the deed? A. He put it in the cigar box, put it on the mantle.

"Q. Whose cigar box was it? A. Well, it was Theron's."

This evidence, in our opinion, is sufficient to show delivery of the deed by the grantors.

■ Possession of a duly executed deed by a grantee raises a presumption that the deed was delivered by the grantor and accepted by the grantee, in the absence of evidence to the contrary. Tex.Jur.2d Vol. 19, Deeds, Sec. 97, p. 380, and cases there cited.

The finding of the jury as to the intention of Florence M. Lewis when she executed the deed that it should not be delivered to the grantees for the purpose of vesting title in them in accordance with the terms of the deed is, in our opinion, of no effect. The intention of Mrs. Lewis as to such matters was conclusively shown by the deed itself. As stated in Davis v. Bond, 138 Tex. 206, 158 S.W.2d 297, 301: "The deed is conclusively presumed, in the absence of accident, mistake or fraud, to use language which, when unambiguous, truly evidences the intention of the grantor."

The judgment of the Trial Court is affirmed.

Affirmed.